No. 96-3554

United States of America,           *
                                    *
            Appellee,               *
                                    *
      v.                            *   Appeal from the United States
                                    *   District Court for the
Gary L. Dolan,                      *   District of Nebraska
                                    *
            Appellant.              *


Submitted: March 11, 1997

Filed: July 24, 1997


Before McMILLIAN and HANSEN, Circuit Judges, and MAGNUSON,[*] District Judge.


MAGNUSON, District Judge.


      Gary L. Dolan appeals his jury convictions and sentence on one count of conspiracy to commit bankruptcy fraud and one count of concealing and aiding and abetting in the concealment of property of a bankruptcy estate. On appeal, Dolan contends that the indictment was barred by the applicable statute of limitations, that there was insufficient evidence to support his convictions, that the district court[1] committed several errors at trial, and

_____

[*]The HONORABLE PAUL A. MAGNUSON, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

[1]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

that the district court erred in applying the sentencing guidelines.  We affirm.

## I.

Gary L. Dolan is an attorney who represented businessman David R. Anderson in connection with business litigation against several financial institutions in the mid-1980s.  On September 16, 1987, at least two of those financial institutions filed an involuntary bankruptcy petition against Anderson.  Although Dolan had never served as a debtor's counsel in a bankruptcy proceeding, Anderson retained Dolan to represent him in the involuntary proceeding.  After the bankruptcy judge denied Anderson's motion to dismiss the involuntary petition in February 1988, Dolan, on Anderson's behalf, successfully moved to convert the involuntary proceeding to a voluntary proceeding under Chapter 11 of the United States Bankruptcy Code.

Dolan assisted Anderson in filing his voluntary bankruptcy petition, which included schedules listing assets and liabilities, on July 26, 1988. Anderson provided Dolan with the information to be included on the schedules, but, according to Dolan, this information was insufficient. Specifically, Dolan expressed surprise that in listing his assets, Anderson did not include any cash, household goods, or vehicles.  Dolan testified at trial that he was also concerned about Anderson's failure to assert ownership of stock in a company with which Anderson was associated called Medical Devices.  Dolan believed that Anderson owned a number of vehicles and either owned or controlled Medical Devices.  When Dolan discussed these omissions with Anderson, Anderson told Dolan that all the vehicles he drove were titled in various corporations and that he did not own any stock in Medical Devices.  Dolan

testified that at the time the schedules were filed, he had no reason to believe that any information contained in the schedules was false, although he realized that they may have been incomplete.

Two omissions from Anderson's bankruptcy petition are relevant to Dolan's appeal. First, evidence at trial demonstrated that Anderson failed to disclose his ownership of a 1981 Ferrari valued at $85,000. At the time that Dolan and Anderson filed the petition and accompanying schedules, the Ferrari was securing a promissory note at Security National Bank ("Security"). Anderson obtained the related loan from Security on September 27, 1987. The original title to the Ferrari, which was in Anderson's name, had been in Security's possession since that date. Security became aware of Anderson's bankruptcy proceedings after receiving the notice of bankruptcy sent to all creditors pursuant to Chapter 11. Shortly thereafter, Security's counsel filed a proof of claim with the bankruptcy court that included a copy of Anderson's title to the Ferrari. Robert Burford, an Executive Vice President at Security, testified at trial that after the proof of claim was filed, Anderson contacted him and asked to change the name on the title to Anderson's son, Trent Anderson. When Burford refused to comply, Dolan prepared and sent to Burford a stipulation for relief from the stay of the bankruptcy proceedings that would allow Security to enforce its security interest in any collateral securing Anderson's obligations. Testimony at trial indicated that Dolan followed up on his correspondence with Security by contacting Richard Meyers, Security's counsel, to suggest a transaction that would accomplish the title transfer that Anderson sought. According to Meyers, Dolan proposed an arrangement by which Security would obtain relief from the automatic bankruptcy stay and repossess the Ferrari. Then, an individual of Anderson's choosing would buy the Ferrari from Security for the full balance that Anderson owed--$27,000--

-3-

which was significantly less than the value of the Ferrari. Meyers sent Dolan a letter, dated August 22, 1988, refusing to agree to his proposal or any other proposal that would remove equity from the bankruptcy estate.

Dolan testified that he learned about the Ferrari from Meyers after the schedules were filed and before the first meeting of Anderson's creditors. He stated that when he asked Anderson about the Ferrari, Anderson told Dolan that the vehicle was no longer titled in his name. Contrary to the trial testimony of Burford and Meyers, Dolan claimed to believe that Anderson transferred the automobile title to a third party before the bankruptcy schedules were filed on July 26, 1988. However, evidence presented at trial established that Anderson transferred the title to the Ferrari to his son, Trent Anderson, on September 2, 1988. Neither Dolan nor Anderson informed the bankruptcy court or Anderson's creditors of Anderson's ownership and transfer of the Ferrari. Moreover, the jury heard Dolan's prior testimony that he and Anderson discussed the value of the Ferrari as well as various means of using the car's value to fund a bankruptcy plan. The prior testimony also revealed Dolan's knowledge that the automobile was still titled in Anderson's name in August 1988.

The second crucial omission from Anderson's bankruptcy petition concerns a lawsuit that Anderson filed against Intermedics, Inc. ("Intermedics") in the District Court of Brazoria County, Texas on September 14, 1988. The suit, which included Anderson and Medical Devices as plaintiffs, sought, among other things, compensation for personal injuries suffered by Anderson as a result of business dealings between Medical Devices and Intermedics. Anderson was represented primarily by Texas attorney Michael Phillips. Anderson did not include the existence of this

personal claim in his bankruptcy schedules. Although Dolan was not the primary attorney on the Texas case and did not draft the petition, he was listed as additional counsel and was aware that the lawsuit was filed during the course of the bankruptcy proceeding.

Dolan testified that he did not believe that Anderson had a legally cognizable personal claim against Intermedics, but he deferred to attorney Phillips's decision to file the claim. Anderson and Phillips negotiated a settlement of the Texas suit in November 1988. Shortly thereafter, Dolan received a letter explaining the settlement, which provided that Anderson, not Medical Devices, was to receive most of the settlement proceeds. Anderson asked Dolan to approve the settlement, which Dolan did after expressing his uneasiness to Anderson. On November 29, 1988, as a result of the settlement, Anderson received two checks totaling approximately $1.9 million. Dolan signed an acknowledgment for this disbursement. The settlement agreement also provided that Dolan was to receive $50,000 as a personal bonus. When Dolan expressed concern about removing the $50,000 from the bankruptcy estate, Anderson told Dolan that Medical Devices, not Anderson himself, would make the payment, thus avoiding a conflict with the bankruptcy proceeding. At no time did Dolan or Anderson notify the bankruptcy court or amend Anderson's bankruptcy schedules to reflect the existence of Anderson's personal claim or any of the payments in conjunction with that claim. A unique opportunity to amend the schedules arose on May 26, 1989, when the bankruptcy court entered an order requiring Anderson to amend the schedules to reflect the receipt of stock that had been listed as collateral on one of Anderson's bank debts. While Anderson filed amended schedules that listed 100,000 shares of stock as directed by the bankruptcy court, neither Anderson nor

Dolan included the Ferrari or the proceeds from the Intermedics settlement on the new document.

Dolan testified that after more closely reviewing the settlement, he had serious concerns about its propriety. He told Anderson that either the settlement was a wrongful conversion of the assets of Medical Devices by Anderson or that Anderson had misrepresented his interest in Medical Devices or other personal claims when he filed the bankruptcy schedules. According to Dolan, he proposed that Anderson either unwind the settlement with Intermedics, since the settlement would have to be approved by the bankruptcy court if it were a personal claim, or issue a disclosure indicating that the payment to Anderson, rather than Medical Devices, was in error. He also recommended that Anderson place the settlement proceeds into a separate Medical Devices bank account until the issue was resolved.[2] When Dolan told Anderson that he could not assure Anderson that he would be safe from criminal prosecution for fraud if he issued a disclosure, Anderson directed Dolan not to disclose any information about the settlement or settlement proceeds that would subject him to civil or criminal liability. After reviewing the Code of Professional Responsibility, Dolan concluded that he could not disclose the settlement if it would subject Anderson to criminal prosecution. Dolan also decided that while he was permitted to withdraw from representation under the Code, he was not required to do so and thus continued to represent Anderson.

Although Dolan knew that Anderson had personally received

---

[2]Dolan did not learn until after he was indicted that Anderson did not place the settlement proceeds into a Medical Devices account, as Dolan had recommended, but rather in an account under his son's name.

approximately $1.9 million in settlement proceeds and had access to a Ferrari valued at $85,000, he repeatedly told Anderson's creditors that Anderson was unable to pay any funds to settle the bankruptcy claims. Both parties agree that Dolan did not mention either Anderson's ownership of the Ferrari or his receipt of the $1.9 million payment to any creditors' counsel at any time during settlement negotiations. At least six attorneys who represented Anderson's creditors testified at trial to that effect. Dolan justified this withholding of information from creditors in a number of different ways. For instance, he believed that many of the creditors' counsel had learned independently of Anderson's settlement with Intermedics and thus were not prejudiced by Dolan's failure to disclose it. Dolan also thought that none of the creditors would be harmed by the nondisclosure because the bankruptcy reorganization plan that Dolan proposed on Anderson's behalf called for all creditors whose claims were successfully litigated to be paid in full. Furthermore, Dolan told at least one creditor that funds would become available to pay any negotiated settlement at a later date. Dolan's defense throughout the trial concerning the nondisclosure of the Ferrari was his professed belief of Anderson's testimony that Anderson did not own the Ferrari at the time the bankruptcy schedules were filed. As for the settlement, Dolan testified that he told Anderson that Anderson was required to disclose the settlement. Because Anderson directed Dolan not to disclose any information that would expose Anderson to criminal prosecution, Dolan believed that his nondisclosure was in good faith and consistent with the Code of Professional Responsibility. He also believed that Anderson had followed his advice and placed the settlement proceeds in a separate Medical Devices account, removing them from Anderson's immediate possession.

A number of creditors' attorneys testified that Dolan repeatedly informed them that Anderson did not possess funds sufficient to pay the settlement of bankruptcy claims. Several of the testifying attorneys stated that they relied on Dolan's assertions in determining how to settle their claims against Anderson's bankruptcy estate. One attorney, Kathleen Jaudzemis, represented creditor South Omaha Feed and Supply Company ("South Omaha") in 1988 and 1989. On August 10, 1989, Jaudzemis had a telephone conversation with Dolan about resolving South Omaha's claim against Anderson. Jaudzemis testified that Dolan offered to settle the claim, which totaled $21,245.81 plus interest, for $5,000 to be paid as a lump sum. Dolan also told Jaudzemis that $5,000 was all that Anderson was able to afford at the time. Jaudzemis conveyed Dolan's offer to her client, who, on August 29, 1989, directed Jaudzemis to accept the offer. On the same day, Jaudzemis telephoned Dolan to accept the offer. According to Jaudzemis's testimony, Dolan indicated during their conversation that Anderson may no longer have the money to pay the entire $5,000 to South Omaha because a portion of the funds were earmarked for other settlements. Dolan did eventually agree to honor the original $5,000 settlement offer to South Omaha; however, South Omaha never received payment from Anderson. Finally, Jaudzemis testified that if she had known that Anderson had owned a Ferrari worth $85,000 or had received settlement proceeds in the amount of $1.9 million, she would not have recommended that South Omaha accept Dolan's offer to settle its claims for only $5,000.

On July 31, 1989, prior to his conversations with Kathleen Jaudzemis, Dolan filed a motion with the bankruptcy court on Anderson's behalf seeking approval of several settlement agreements and dismissal of the Chapter 11 proceeding. At least two creditors submitted objections to some of the settlements and conditionally

objected to the motion to dismiss the bankruptcy proceeding. A hearing on Anderson's motion was held before the bankruptcy court[3] on September 5, 1989. The primary dispute at the hearing concerned a settlement between Anderson and Dr. Richard Miles, which required Anderson to pay Miles $90,000 in cash to settle Miles's claim against Anderson's bankruptcy estate.[4] In telephone conversations that occurred on or about August 23 and 24, 1989, Dolan informed Miles's attorney, Patrick Betterman, that Anderson did not have sufficient funds to pay $90,000 to Miles immediately. Betterman testified at trial that Dolan told him that Anderson could pay Miles only $45,000 cash and satisfy the remainder of the settlement amount with a letter of credit for $45,000 payable in six months. At the September 5 hearing, Dolan testified that he did not know if Anderson could commit an additional $45,000 in cash to settle Miles's claim. Anderson told the bankruptcy court that he did not have $90,000 to fund the settlement with Miles but that he could offer $45,000 cash and the $45,000 letter of credit. At no time during the hearing did Dolan or Anderson notify the bankruptcy court of Anderson's access to the Ferrari or his receipt of $1.9 million in settlement proceeds. Miles settled his claims against Anderson on September 5 for $49,000 cash and the $45,000 letter of credit. At the conclusion of the hearing, the bankruptcy court approved all of the settlements before it and dismissed Anderson's bankruptcy proceeding based on its belief that dismissal was in the best interests of the creditors.

---

[3]The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

[4]The Miles settlement involved Miles's personal claims against the bankruptcy estate as well as claims that Miles was pursuing on behalf of Howard Hahn, who was indebted to Miles for unrelated reasons.

On August 18, 1994, Dolan was charged with conspiring to conceal property of the bankruptcy estate in violation of 18 U.S.C. § 371 (Count I) and concealing and aiding and abetting in the concealment of property of the bankruptcy estate in violation of 18 U.S.C. §§ 152 and 2 (Count II). David Anderson, Dolan's alleged co-conspirator, pled guilty to fraudulently transferring property of the bankruptcy estate in a separate case.  See United States v. Anderson, 68 F.3d 1050 (8th Cir. 1995).  It is undisputed that Anderson concealed assets during his bankruptcy proceeding; however, he did not plead guilty to concealing the assets at issue in this case--the 1981 Ferrari and the $1.9 million civil settlement award.  See id. at 1052-53.

Several months after his indictment, Dolan moved to dismiss Count I on statute of limitations grounds and requested a bill of particulars for Count II.  The then-presiding judge, the Honorable Warren K. Urbom, denied Dolan's motion to dismiss but granted his motion for a bill of particulars. Pursuant to the court's order, the government filed a bill of particulars and later an amended bill of particulars for Count II.  On May 4, 1995, Judge Urbom recused himself from the case in response to Dolan's motion to recuse.  The case was reassigned to the Honorable Thomas M. Shanahan. Following the reassignment, Dolan moved for reconsideration of Judge Urbom's order denying the motion to dismiss Count I and filed a new motion to dismiss Count II on statute of limitations grounds.  The district court, adopting the Report and Recommendation of the magistrate judge, deferred ruling on Dolan's motions until the presentation of evidence at trial.

Trial began on June 5, 1996.  Dolan again moved to dismiss both counts of the indictment at the close of the government's evidence and renewed the motion at the close of all evidence.  The

district court, after hearing the evidence, denied the motion and charged the jury regarding two alleged overt acts pertaining to Count I:  the August 29, 1989, conversation between Dolan and attorney Kathleen Jaudzemis, and Dolan and Anderson's participation in the September 5, 1989, hearing before the bankruptcy court.  The district court also instructed the jury that it could consider all acts that occurred between July 26, 1988, through September 5, 1989, for purposes of Count II.  The jury, after a short period of deliberation, returned a verdict of guilty against Dolan on both counts of the indictment.  After trial, Dolan filed an unsuccessful motion for judgment of acquittal or in the alternative for a new trial.  Dolan was subsequently sentenced to twenty-four months of imprisonment to be followed by a term of three years of supervised release.  Dolan appeals his convictions and sentence.

## II.

### A.

Dolan argues first that the district court should have dismissed Count I of the indictment because the government failed to allege and prove an overt act in furtherance of the conspiracy within the relevant statute of limitations.  A "challenge to the sufficiency of the indictment is a question of law that we review de novo."  United States v. Morris, 18 F.3d 562, 567 (8th Cir. 1994) (quoting United States v. Zangger, 848 F.2d 923, 924-25 (8th Cir. 1988)).  To be sufficient, an indictment must fairly inform the defendant of the charges against him and allow him to plead double jeopardy as a bar to future prosecution.  See id. at 568 (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).  Statutes of limitations in criminal cases "are to be liberally interpreted in favor of repose."  United States v. Marion, 404 U.S.

307, 322 n.14 (1971).

The statute of limitations applicable to Count I of the indictment provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282. In a conspiracy charge, the limitations period begins to run from the occurrence of the last overt act committed in furtherance of the conspiracy that is set forth in the indictment. See Fiswick v. United States, 329 U.S. 211, 216 (1946); accord Buford v. Tremayne, 747 F.2d 445, 448 (8th Cir. 1984); United States v. Alexander, 736 F. Supp. 968, 995 (D. Minn. 1990). The government, to prevent the indictment from being found defective on its face, "must allege and prove the commission of at least one overt act by one of the conspirators within [the five-year] period in furtherance of the conspiratorial agreement." United States v. Davis, 533 F.2d 921, 926 (5th Cir. 1976) (citations omitted). The indictment in this case was returned on August 18, 1994. Thus, to satisfy the statute of limitations as to the conspiracy count, the indictment must set forth at least one overt act that occurred on or after August 18, 1989.

> Count I of the indictment alleges that
>
> from on or about July 26, 1988, and continuously thereafter until on or about September 5, 1989, in the District of Nebraska, the defendant, Gary Dolan, knowingly and willingly did . . . conspire . . . with David Anderson to . . . conceal . . . property belonging to the bankruptcy estate . . . . In furtherance of the said conspiracy and to affect the objects thereof, in the District of Nebraska and elsewhere, one or more of the co-conspirators committed and caused to be committed one or more of the following overt acts.
>
> . . .

-12-

> 12.     On or about September 5, 1989, the United States
> Bankruptcy Court for the District of Nebraska dismissed the
> bankruptcy proceeding captioned In Re, David R. Anderson,
> Docket No. BK87-40028.

(R. at 1-2, 4.)  The district court, which had deferred ruling on Dolan's motion to dismiss the indictment on statute of limitations grounds until the close of evidence, found that the indictment alleged at least one overt act within the limitations period and that the government had proved the existence of a conspiracy by a preponderance of the evidence.  The court denied Dolan's motion and permitted Count I to be submitted to the jury.

Dolan contends that the district court erred in finding that the government successfully alleged an overt act in furtherance of the conspiracy.  As Dolan correctly points out, the only overt act set forth in the indictment that falls within the applicable statute of limitations is the bankruptcy court's dismissal of Anderson's bankruptcy proceeding on September 5, 1989.  Because the bankruptcy court's dismissal of the proceeding is an action of a third party, Dolan argues, it cannot be considered an overt act by either conspirator and thus cannot extend the statute of limitations.

Dolan reads Count I of the indictment too narrowly.  The indictment charges that Dolan and Anderson "committed and caused to be committed" the dismissal of Anderson's bankruptcy proceeding.  The overt act alleged by the government is not the bankruptcy court's dismissal of the proceeding, as Dolan suggests, but rather Dolan's and Anderson's active participation in the September 5, 1989, hearing.  At the hearing, Anderson informed the bankruptcy court that he could not obtain the $45,000 necessary to satisfy his settlement with Dr. Richard Miles.  Dolan testified that he did not know whether Anderson had $45,000 to effect the settlement.  Dolan

-13-

also renewed his request for the bankruptcy court to dismiss the bankrupcty proceeding. Thus, the jury could have found that Dolan "procured" the dismissal of the bankruptcy action by participating in the September 5 hearing. Such an act, if proven, would constitute an overt act alleged in the indictment and contained within the limitations period. We find that the indictment was sufficient as to Count I.

In arguing against such a finding, Dolan contends that the innocent act of a third party, such as a court, which is not itself the object of the conspiracy, cannot constitute an overt act in furtherance of the conspiracy. Dolan cites to two cases that he deems analogous to the situation presented in this case. See United States v. Girard, 744 F.2d 1170 (5th Cir. 1984); United States v. Davis, 533 F.2d 921 (5th Cir. 1976). In each of the cases cited, the Fifth Circuit found that an action of a third party within the limitations period that had been induced by the defendants did not necessarily satisfy the statute of limitations set forth in 18 U.S.C. § 3282. See Girard, 744 F.2d at 1173; Davis, 533 F.2d at 927-28. Davis is readily distinguishable from the instant case because the actions of the defendants that prompted the third party to act were completed more than five years prior to the filing of the indictments. See Davis, 533 F.2d at 928 (defendants made false statements and representations to the Department of Labor outside of the limitations period that induced the Department to act within the limitations period).

The result in Girard also fails to support Dolan's position. In that case, the defendant accepted and retained a payment from a third party, the Housing Authority of New Orleans, within the limitations period. See Girard, 744 F.2d at 1171. The payment was induced by the defendant's earlier actions, which fell outside of

-14-

the limitations period.  See id.  The Fifth Circuit relied exclusively on the defendant's act of accepting the payment and not on the Housing Authority's act in issuing it.  See id. at 1173.  The court specifically declined to reach the issue of whether the Housing Authority's reliance on the defendant's earlier fraud constituted an overt act.  See id. at 1173-74.

In the instant case, Dolan and Anderson made statements to the bankruptcy court on September 5, 1989, that induced the bankruptcy court to dismiss Anderson's bankruptcy proceeding on the same day.  It is undisputed that September 5, 1989, falls within the limitations period.  Unlike in Davis, both the conspirators and the innocent third party acted within the time limit set forth n 18 U.S.C. § 3282.  Thus, the government successfully alleged and proved the commission of at least one overt act in furtherance of the conspiracy by one of conspirators within the limitations period.  See Grunewald v. United States, 353 U.S. 391, 396-97 (1957).

Dolan further contends that he was not given sufficient notice of all the charges against him.  While the government concedes that the indictment could have been worded more clearly, a reasonable reading of Count I would have informed Dolan that the hearing before the bankruptcy court was the overt act on which the government relied to satisfy the statute of limitations.  Moreover, if the plain language of the indictment failed to alert Dolan to the precise nature of the government's allegations, the First Amended Bill of Particulars submitted by the government on Count II clarified the indictment and put Dolan on notice that the government considered his participation in the hearing on September 5, 1989, to be an overt act in furtherance of the conspiracy. See United States v. Helmel, 769 F.2d 1306, 1322 (8th Cir. 1985)

("While a bill of particulars cannot save an otherwise invalid indictment, it can cure deficiencies as to form."). The Bill of Particulars did not add a necessary fact or element; rather, it elaborated upon an overt act already included in the indictment. The fact that the Bill of Particulars relates to Count II does not lessen its role in providing Dolan with notice.

The government also contends that the August 29, 1989, telephone conversation between Dolan and Kathleen Jaudzemis constitutes an additional overt act in furtherance of the conspiracy. During the conversation, Dolan allegedly told Jaudzemis that Anderson could not afford to satisfy a $5,000 settlement to South Omaha even though Dolan was aware of the Ferrari and the settlement proceeds. While this conversation was not an overt act charged in the indictment, the government may satisfy its requisite showing under the statute of limitations by means of an overt act not listed in the indictment. See United States v. Schurr, 794 F.2d 903, 907 n.4 (3d Cir. 1986); United States v. Read, 658 F.2d 1225, 1239 (7th Cir. 1981); cf. United States v. Lewis, 759 F.2d 1316, 1344 (8th Cir.) ("[I]n conspiracy cases, the government is not limited in its proof to establishing the overt acts specified in the indictment."), cert. denied sub nom. Milburn v. United States, 474 U.S. 994 (1985); United States v. Ruiz-Altschiller, 694 F.2d 1104, 1109 (8th Cir. 1982) (same), cert. denied sub nom. Perry v. United States, 462 U.S. 1134 (1983). Thus, Dolan's failure to disclose Anderson's assets to Jaudzemis furthered the objectives of the conspiracy to conceal bankruptcy assets and constituted an overt act within the limitations period that was properly considered by the jury. The district court did not err by denying Dolan's motion to dismiss Count I of the indictment.

**B.**

Dolan contends that the district court improperly denied his motion to dismiss Count II of the indictment. Dolan argues both that the indictment fails to allege an offense within the applicable statute of limitations as to Count II and that the district court erroneously submitted Count II to the jury without limiting the jury's evaluation to events occurring after August 17, 1989. We review de novo the district court's denial of Dolan's motion to dismiss. See United States v. Sykes, 73 F.3d 772, 773 (8th Cir.), cert. denied, 116 S. Ct. 2503 (1996).

Count II of the indictment charged Dolan with concealing and aiding and abetting the concealment of bankruptcy assets from on or about July 26, 1988, and continuously thereafter until September 5, 1989. In the First Amended Bill of Particulars, the government listed thirty-three separate acts to be proven at trial in support of the concealment allegations. Two of the listed acts, Dolan's August 29, 1989, telephone conversation with Kathleen Jaudzemis and his participation in the September 5, 1989, hearing before the bankruptcy court, occurred after August 17, 1989. The district court instructed the jury that it could consider all acts that occurred between July 26, 1988, through September 5, 1989, for purposes of Count II.

Dolan first contends that the indictment does not allege an act of concealment or aiding and abetting concealment within the five-year limitations period set forth in 18 U.S.C. § 3282. Dolan's position is without merit. As discussed in Part II.A., supra, the Bill of Particulars set forth two acts that occurred after August 17, 1989, in satisfaction of the statute of limitations. The Bill of Particulars was sufficient to cure any

-17-

deficiencies in the indictment as to form.  See United States v. Helmel, 769 F.2d 1306, 1322 (8th Cir. 1985).  Moreover, the indictment on its face alleges the concealment occurred until September 5, 1989, well within the limitations period.  The district court was correct to deny Dolan's motion to dismiss on statute of limitations grounds.

Dolan also maintains that the district court erred by not instructing the jury that it could consider only acts of concealment that occurred after August 17, 1989.  Dolan argues that the statute of limitations that pertains to concealment of bankruptcy assets and treats concealment as a continuing offense, 18 U.S.C. § 3284, does not apply to the case at bar because Anderson did not seek a discharge from bankruptcy and was not discharged or denied a discharge by the bankruptcy court.  Instead, Anderson moved to dismiss the bankruptcy proceeding.  Dolan believes that a dismissal of a bankruptcy proceeding differs meaningfully from a discharge and therefore that Count II does not  constitute a continuing offense.  Because the jury was improperly instructed, Dolan asserts, its verdict reached conduct well beyond the five-year limitations period.  Dolan asks that we overturn the jury's verdict because we can have no assurance that the jury reached a unanimous verdict as to the two substantive offenses alleged within Dolan believes is the applicable statute of limitations.

The statute of limitations that pertains to concealment of a bankrupt's assets is contained in 18 U.S.C. § 3284.  Section 3284 provides that

> [t]he concealment of assets of a debtor in a case under title 11 shall be deemed to be a continuing offense until the debtor shall have been finally discharged or a discharge denied, and the period of limitations shall not

begin to run until such final discharge or denial of discharge.

18 U.S.C. § 3284. Thus, "concealment is a continuing offense." <u>United States v. Arge</u>, 418 F.2d 721, 724 (10th Cir. 1969). Dolan takes the position that the absence of a discharge or a denial of discharge of Anderson's bankruptcy negates the first part of section 3284 and renders the concealment offense non-continuing. The government disagrees, contending that the dismissal of the bankruptcy proceeding on September 5 had the effect of a denial of discharge, thus satisfying section 3284 and enabling the district court to treat the concealment charge as a continuing offense.

While there is little recent case law on this issue, several courts have extended the statute of limitations under section 3284 to events that have the same effect as denying a discharge of the bankrupt. <u>See, e.g.</u>, <u>United States v. Guglielmini</u>, 425 F.2d 439, 443 (2d Cir.) (finding that waivers of discharge have same effect as denials of discharge although not specifically provided for in section 3284), <u>cert. denied</u>, 400 U.S. 820 (1970); <u>Rudin v. United States</u>, 254 F.2d 45, 47 (6th Cir.) (finding that statute of limitations under section 3284 begins to run on the last day on which debtor could apply for a discharge), <u>cert. denied</u>, 357 U.S. 930 (1958); <u>United States v. Zisblatt Furniture Co.</u>, 78 F. Supp. 9, 12-13 (S.D.N.Y. 1948) (finding that statute of limitations begins to run on the last day on which debtor could obtain a discharge or denial of discharge). In other words, "the period of limitation runs from the date of the event when discharge becomes impossible . . . ." <u>Guglielmini</u>, 425 F.2d at 443.

In the instant case, discharge became impossible on September 5, 1989, the date that the bankruptcy court dismissed Anderson's bankruptcy proceeding. The limitations period began to run on that

-19-

date, and the dismissal served as a discharge or a denial of discharge under section 3284 such that the district court properly treated the concealment charge as a continuing offense. To hold otherwise would too narrowly construe the language of section 3284 and fail to give meaning to the first part of that statute, which clearly provides that the concealment of assets of a debtor shall be deemed a continuing offense. The district court did not err by directing the jury to consider all acts of concealment by Dolan that took place between July 26, 1988, and September 5, 1989, in determining whether Dolan concealed or aided and abetted the concealment of bankruptcy assets as charged in Count II of the indictment.

**III.**

Dolan challenges the sufficiency of the evidence with respect to both counts of conviction. He argues that no reasonable finder of fact could have concluded that his mere representation of Anderson established the existence of a conspiracy between himself and Anderson to commit bankruptcy fraud, as charged in Count I, beyond a reasonable doubt. As to Count II, Dolan contends that the evidence could not support a conviction of concealing or aiding and abetting the concealment of bankruptcy assets because most creditors became aware of the Intermedics settlement by other means.

In reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences from the evidence that support the verdict. See United States v. Melina, 101 F.3d 567, 573 (8th Cir. 1996). We will uphold the verdict if "there is an interpretation of the evidence

that would allow a reasonable jury to conclude guilt beyond a reasonable doubt." United States v. Uder, 98 F.3d 1039, 1045 (8th Cir. 1996). We may affirm even if the evidence against the defendant is entirely circumstantial. See United States v. Smith, 104 F.3d 145, 147 (8th Cir. 1997). Finally, decisions concerning witness credibility "are to be resolved in favor of the jury's verdict." Id.

To prove a conspiracy, the government must demonstrate that an agreement existed between two or more people to commit an offense and that one or more of the conspirators acted to affect the object of the conspiracy. See United States v. Hoelscher, 764 F.2d 491, 494 (8th Cir. 1985). The agreement need not be formal and can be proven by circumstantial evidence. See id. The government must prove beyond a reasonable doubt that the defendant had knowledge of the essential object of the conspiracy. See Henderson v. United States, 815 F.2d 1189, 1191-92 (8th Cir. 1987). Once a conspiracy has been proven, even "slight evidence" of a defendant's participation is sufficient to support a conviction. United States v. Tallman, 952 F.2d 164, 167 (8th Cir. 1991), cert. denied sub nom. Green v. United States, 504 U.S. 962 (1992).

We find that the evidence outlined in Part I, supra, viewed in the light most favorable to the verdict, is sufficient to sustain Dolan's conviction for conspiracy to commit bankruptcy fraud. Specifically, the government presented evidence from which a reasonable jury could conclude that Dolan talked with Anderson about whether to disclose certain bankruptcy assets; that Dolan was aware of Anderson's ownership and transfer of a 1981 Ferrari and Anderson's personal receipt of over $1.9 million in settlement proceeds; that Dolan signed an acknowledgment authorizing the payment of the settlement proceeds to Anderson personally; that

Dolan and Anderson concealed these assets throughout the course of the bankruptcy; that Dolan heard Anderson testify three times under oath that he had received no money personally; that Dolan repeatedly told creditors, including Kathleen Jaudzemis and Patrick Betterman, that Anderson lacked sufficient funds to satisfy their claims; and that Dolan requested the bankruptcy court to approve certain settlements and dismiss Anderson's bankruptcy proceeding without providing the court and creditors with essential information about Anderson's assets. Moreover, it "properly falls to the jury to determine witness credibility." United States v. Jones, 110 F.3d 34, 35 (8th Cir. 1997). The jury chose not to credit Dolan's testimony that he believed that Anderson did not personally have access to the Ferrari or the Intermedics settlement proceeds in the face of contrary testimony by several other witnesses. The evidence presented at trial was sufficient for a reasonable minded jury to find beyond a reasonable doubt that Dolan participated in a conspiracy to conceal assets belonging to Anderson's bankruptcy estate as charged in Count I of the indictment.

To sustain Dolan's conviction for aiding and abetting in the concealment of property of the bankruptcy estate, the government must prove "(1) that the defendant associated himself with the unlawful venture; (2) that he participated in it as something he wished to bring about; and (3) that he sought by his actions to make it succeed." United States v. Duke, 940 F.2d 1113, 1117 (8th Cir. 1991) (quotations and citations omitted). The government must demonstrate an "affirmative participation which at least encourages the perpetrator." United States v. Ivey, 915 F.2d 380, 384 (8th Cir. 1990).

Viewed in the light most favorable to the verdict, the

-22-

evidence presented at trial was more than sufficient to establish Dolan is guilty beyond a reasonable doubt of concealng or aiding and abetting Anderson in the concealment of assets belonging to the bankruptcy estate. Despite Dolan's assertion that many of Anderson's creditors learned of the Intermedics settlement through their own investigation or perhaps from Dolan himself, several creditors' attorneys testified that they remained unaware of Anderson's personal receipt of the settlement proceeds. Rather, they believed that the proceeds had been paid to Medical Devices. The evidence showed that Anderson told at least one creditor in July 1989 that he had received no money from the settlement, and other creditors continued to inquire about whether Anderson had received funds from the settlement in June 1989. Additionally, it is undisputed that Dolan continued to tell creditors throughout the duration of the bankruptcy proceedings that Anderson lacked sufficient funds to settle all claims in full, despite his knowledge of the Ferrari and the settlement proceeds. Dolan's challenge to the sufficiency of the evidence underlying his convictions must fail.

## IV.

Dolan argues that the district court committed several errors at trial, including admitting the testimony of Mardell Hergenrader, erring in its instructions to the jury concerning the definition of the estate of the debtor, and permitting insufficient jury deliberations.

### A.

We review the district court's decision whether to admit evidence at trial for abuse of discretion. See United States v.

<u>Ballew</u>, 40 F.3d 936, 941 (8th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 1813 (1995).  We will reverse Dolan's conviction only if an improper evidentiary ruling "affects the substantial rights of the defendant or when we believe that the error has had more than a slight influence on the verdict . . . ."  <u>Id.</u>

Dolan contends that the district court abused its discretion when it admitted testimony by Mardell Hergenrader, David Anderson's office manager, that Anderson told her that he "had [Dolan] by the balls."  (Tr. at 278.) Anderson made the statement in question to Hergenrader in February 1988, shortly after returning from a meeting at which Anderson paid Dolan $50,000.  Dolan was representing Anderson in the bankruptcy proceeding at that time.  According to Dolan, Hergenrader's statement was inadmissible hearsay, and its probative value did not outweigh its prejudicial effect. The district court correctly held that Anderson's statement was admissible as Anderson's present sense impression, <u>see</u> Fed. R. Evid. 803(1), and additionally as a statement showing Anderson's then existing state of mind indicating a plan, motive, and design concerning his transactions and relationship with Dolan.  <u>See</u> Fed. R. Evid. 803(3).  The district court also properly determined that the statement's probative value outweighed its potential for prejudice.  <u>See</u> Fed. R. Evid. 403; <u>see also</u> <u>United States v. Just</u>, 74 F.3d 902, 904 (8th Cir. 1996) ("A trial court has broad discretion to determine both the relevance of evidence and whether its probative value outweighs the danger of unfair prejudice.").  We find that the district court did not abuse its broad discretion or affect Dolan's substantial rights by admitting Mardell Hergenrader's testimony.

**B.**

We review a district court's formulation of jury instructions for abuse of discretion.  See United States v. Kime, 99 F.3d 870, 877 (8th Cir. 1996), cert. denied, 117 S. Ct. 1015 (1997).  In objecting to Instruction No. 19, which defines the term "estate of the debtor," Dolan states only that his previous objections "were made on the record and will not be repeated herein." (Appellant's Br. at 44.)  While Dolan has not directed us to the transcript pages that contained his earlier objections, the government has provided an adequate citation.  At trial, the district court had a lengthy discussion with counsel concerning the disputed definition, at the conclusion of which it rejected Dolan's objections.  The court also held a supplemental hearing about the instruction prior to submitting it to the jury.  Based on a review of the transcripts of these discussions, we conclude that the district court did not abuse its discretion in submitting Instruction No. 19 to the jury.

**C.**

Dolan claims that the jury's deliberation, which lasted approximately two hours, was of insufficient length for reasonable jurors to have fairly reviewed the testimony of the witnesses and the documents submitted.  Dolan fails to cite any case law in support of this argument.  It seems self-explanatory that "[n]o rule requires a jury to deliberate for any set length of time."  United States v. Penagaricano-Soler, 911 F.2d 833, 846 n.15 (1st Cir. 1990); accord United States v. Brotherton, 427 F.2d 1286, 1289 (8th Cir. 1970) (finding that deliberation lasting five to seven minutes was sufficient).  The length of the jury's deliberation does not entitle Dolan to a new trial.

## V.

Finally, Dolan contends that the district court erred in determining the amount of intended loss attributable to his conduct. The amount of loss for purposes of section 2F1.1 of the United States Sentencing Guidelines is a factual question that we review under the clearly erroneous standard. See United States v. Anderson, 68 F.3d 1050, 1053 (8th Cir. 1995). We review de novo the district court's interpretation of the Guidelines. See id. at 1053-54.

The base offense level in a fraud case is dependent upon the amount of loss attributable to the defendant. See U.S.S.G. § 2F1.1(b); see also Anderson, 68 F.3d at 1054. The focus of the loss calculation under section 2F1.1 "should be on the amount of possible loss the defendant intended to inflict on the victim." Unites States v. Prendergast, 979 F.2d 1289, 1292 (8th Cir. 1992); accord United States v. Saunders, 957 F.2d 1488, 1494 (8th Cir.), cert. denied, 506 U.S. 889 (1992). Therefore, to determine the amount of loss caused by a defendant's bankruptcy fraud, the district court should use the probable or intended loss the defendant meant to inflict, if that amount can be determined and if it is larger than the amount of actual loss. See Anderson, 68 F.3d at 1054 (quoting U.S.S.G. § 2F1.1, app. n.7). The district court should calculate the actual or intended loss amount by using either the value of the assets concealed or the value of the debtor's liabilities, whichever is less. See United States v. Edgar, 971 F.2d 89, 95 (8th Cir. 1992). The Guidelines do not require the district court to determine the loss with precision; "[t]he court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1, app. n.8; accord Anderson, 68 F.3d at 1054.

The district court, after considering the submissions and arguments of the parties, determined that the actual loss suffered by Anderson's creditors due to Dolan's conduct was at least $200,000 and that the intended loss was approximately $340,000. (Tr. at 1410.) The district court apparently reached this amount by beginning with the total liability set forth in Anderson's bankruptcy petition ($1,376,558.91) and subtracting the amount of property included in the bankruptcy schedules ($446,500)and the total amount paid or intended to be paid via settlements with creditors ($590,000). The court's calculations placed the amount of loss within the range of $200,000 to $350,000 for purposes of calculating Dolan's base offense level. See U.S.S.G. § 2F1.1(b)(1)(I).

Dolan contends that the district court should have attributed to him only those losses that resulted from the settlements in which he participated. Dolan further argues that all claims but that of South Omaha were settled on the merits and paid in full, resulting in an intended loss of only $25,000 rather than the amount of $340,000 determined by the district court. Finally, Dolan maintains that he did not cause or intend to cause any actual loss or harm to any of Anderson's creditors. In response, the government argues that the district court correctly determined that Dolan and Anderson conspired to deprive Anderson's creditors of their claims' full value and to settle the claims for less than they were worth and therefore that Dolan should be held responsible for all losses resulting from the conspiracy.

Dolan was convicted by a jury of conspiring with and aiding and abetting Anderson in the concealment of bankruptcy assets. We have already determined that the evidence presented in support of the government's allegations was sufficient to sustain Dolan's

convictions. See Part III, supra. Both the jury and the sentencing judge must have accepted the testimony of creditors who contended that they would not have accepted Dolan and Anderson's settlement offers if they had known the true extent of Anderson's assets. Due to the nature of Dolan's convictions, the district court was correct in determining that Dolan was responsible for all losses suffered by Anderson's creditors as a result of the conspiracy, not merely the $25,000 loss attributed to South Omaha.

Moreover, "the district court was not bound to accept [Dolan's] self-serving assertions at sentencing that he intended no loss to his creditors." Anderson, 68 F.3d at 1054. Determining intent for the purposes of section 2F1.1 is left to the discretion of the sentencing judge; we review such decisions for clear error. See id. The credibility determinations made by the district court in weighing the evidence pertaining to sentencing are "virtually unreviewable on appeal." Id. (quoting United States v. Adipietro, 983 F.2d 1468, 1479 (8th Cir. 1993)). Dolan's renewed assertion that he intended no loss to the creditors cannot, without more, overcome the sentencing judge's determination of Dolan's intent.

We find that the district court's calculation of the amount of loss intended by Dolan was not clearly erroneous. The evidence demonstrated that Dolan and Anderson, together, intended to conceal assets from creditors who were entitled to them by settling claims without revealing the true extent of Anderson's assets. The district court properly considered the loss intended by Dolan as part of the conspiracy, rather than the actual loss or the maximum potential loss, in imposing its sentence. See id. at 1055. We conclude that the district court correctly interpreted the Guidelines and properly calculated the amount of loss for purposes of section 2F1.1 of the Guidelines.

For the reasons stated, we affirm the judgment of the district court.

A true copy.

    Attest:

          CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT