# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-30819

United States Court of Appeals
Fifth Circuit

**FILED**
July 15, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff—Appellee

v.

BOBBY D. CURTIS,

Defendant—Appellant

Appeal from the United States District Court
for the Western District of Louisiana

ON PETITION FOR REHEARING

Before JONES, SMITH, and OWEN, Circuit Judges.

PER CURIAM:

IT IS ORDERED that the petition for panel rehearing and the petition for rehearing en banc are DENIED. The opinion, previously filed on June 3, 2014 is WITHDRAWN, and the following opinion is SUBSTITUTED therefore.

On rehearing, the panel issues the following slightly revised opinion to clarify its conformity with the applicable standard of review.

Appellant Bobby D. Curtis was indicted for and pled guilty to concealment of bankruptcy estate assets valued at more than $942,000. After unsuccessfully moving to withdraw his guilty plea, Curtis filed a motion to vacate his conviction under 28 U.S.C. § 2255, arguing that his court-appointed counsel rendered ineffective assistance. A magistrate judge recommended

No. 12-30819

granting relief but was overruled by the district court. For the following reasons we AFFIRM.

## BACKGROUND

In early January 2002, Curtis formed the company Gen-I-Tech, Inc. for the purpose of installing computer and internet equipment in public schools and libraries pursuant to the Universal Service Administrative Company's ("USAC") School and Libraries Program, commonly referred to as the federal E-Rate Program. The E-Rate Program provides discounts to qualifying schools and libraries on eligible telecommunication or internet services by paying a percentage of the fee for such services. In order to receive this discount, the school or library must select a service provider, such as Gen-I-Tech, from a competitive bidding process and apply to the USAC for E-Rate discount funds. After the USAC reviews and approves an application, the USAC issues a funding commitment decision letter to the school or library indicating the discount share that has been approved for the services being performed. Once the funding commitment letter is received and services have begun, either the service provider or the qualifying school or library may invoice the USAC for the discount share of those services.

Shortly after Curtis formed Gen-I-Tech, the company agreed to perform technology services for Westside Alternative School ("Westside") pursuant to the E-Rate Program. Westside submitted an application to the USAC for funds on January 17, 2002, and the USAC issued a funding commitment letter for Gen-I-Tech's services on October 8, 2002. Gen-I-Tech completed services for Westside on October 30, 2002, and was paid a total of $213,111.38. The E-Rate Program paid Gen-I-Tech $191,800.72 of the total, making four separate payments on March 31, 2003, May 8, 2003, June 19, 2003, and June 30, 2003. On February 6, 2003, three additional applications for Gen-I-Tech's services were submitted to the USAC by Lafayette Christian Academy ("Lafayette"),

2

No. 12-30819

Youth Challenge Program, and Job Challenge Program. The USAC did not issue funding commitment letters to those programs until after Curtis was discharged from bankruptcy later in 2003.

On May 24, 2002, months after Westside applied for the E-Rate discount funds but before the application was approved, Curtis filed for personal bankruptcy under Chapter 13, listing as a personal asset his stock in Gen-I-Tech, valued at $2000. Three months later, on August 29, 2002, Curtis converted to Chapter 11 bankruptcy, followed by a conversion to Chapter 7 bankruptcy on February 12, 2003. The bankruptcy court discharged Curtis from bankruptcy on July 23, 2003, three weeks after Gen-I-Tech received its last payment from the E-Rate Program for its work at Westside. Attorney Rocky Willson represented Curtis throughout his bankruptcy case.

On July 23, 2008, exactly five years after being discharged from bankruptcy, Curtis was charged by indictment with knowingly and fraudulently concealing bankruptcy assets in violation of 18 U.S.C. § 152(1) by undervaluing his Gen-I-Tech stock and failing to disclose assets of Gen-I-Tech. The district court appointed attorney Allen Smith to represent Curtis in his criminal proceedings. Smith, who had never before handled a bankruptcy criminal case, later admitted that while representing Curtis he (1) never contacted attorney Willson regarding Curtis's bankruptcy case, (2) does not recall ever looking at Curtis's bankruptcy petition, upon which Curtis's criminal proceedings were based, and (3) did not know in advance of Curtis's plea hearing which E-Rate Program contracts Curtis was pleading guilty to concealing. Moreover, there is no evidence in the record that Smith actively investigated Curtis's criminal case or sought discovery before Curtis's plea hearing.

At the plea hearing on January 12, 2009, Curtis indicated that he understood he was charged with concealment of bankruptcy estate assets, that

No. 12-30819

he had "ample opportunity" to discuss the charge with attorney Smith, and had in fact fully discussed the indictment with him. Curtis claimed he was pleading guilty "because I am guilty," and agreed that he "committed each and every one of the elements of th[e] offense." Less than four months later, Curtis filed a motion to withdraw his guilty plea, arguing that the government had filed the indictment against him one day after the applicable five-year statute of limitations had expired and that Curtis had discovered new evidence of correspondence between him and attorney Willson suggesting that Curtis had disclosed the existence of Gen-I-Tech's E-Rate contracts to Willson and, therefore, was not guilty of fraudulently concealing assets. The district court denied Curtis's motion, sentenced him to thirty-seven months in prison and a three-year term of supervised release, and ordered him to pay over $355,000 in restitution. Curtis filed the instant Section 2255 motion on October 18, 2010. Although Curtis completed his prison sentence in February 2012, he currently remains on supervised release. Therefore, the instant Section 2255 proceeding is timely.

Curtis argued in his Section 2255 motion that Smith rendered ineffective assistance because he (1) failed thoroughly to research the applicable statute of limitations on Curtis's bankruptcy fraud charge, (2) relied on Curtis to conduct legal research and write critical motions, (3) failed to call Willson as a witness at Curtis's plea withdrawal hearing, (4) failed to ask for a downward departure in Curtis's sentencing, and (5) erred in advising Curtis that his maximum exposure under the sentencing guidelines was six to twelve months imprisonment. A two-day evidentiary hearing on Curtis's motion took place before a magistrate judge with Curtis, Willson, and Smith being among those who testified. After the hearing, the magistrate judge issued a report and recommendation that the motion be granted because Smith rendered ineffective assistance by erroneously advising Curtis that his indictment was

4

timely, failing to contact Willson, and failing to properly investigate the case. However, the district court declined to follow this recommendation and denied Curtis's motion on the grounds that the indictment against Curtis was timely and Curtis was not prejudiced by Smith's failure to contact Willson because Willson had no knowledge during Curtis's bankruptcy proceedings of the E-Rate contracts that Curtis fraudulently concealed.  The district court denied Curtis's request for a certificate of appealability, but this court granted it on the issues whether counsel rendered ineffective assistance by failing to adequately research the applicable statute of limitations, contact Willson, or receive and/or review discovery before advising Curtis to plead guilty.

## STANDARD OF REVIEW

In a Section 2255 appeal, this court determines whether a conviction was obtained in violation of federal law or the United States Constitution.  Because Curtis asserts only ineffective assistance of counsel claims, the standard of review is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance of counsel claim, Curtis must show that Smith's performance was deficient and that the deficient performance prejudiced Curtis's defense.  *Id*. at 687.  Furthermore, in order to show that his defense was prejudiced, Curtis must demonstrate that but for Smith's unprofessional errors, Curtis would not have pled guilty and would have insisted on going to trial.  *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) ("In order to satisfy the second, or 'prejudice,' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").  Relevant here, Curtis contends that he was innocent of the charges either because the applicable statute of limitations had run or because he was not required to reveal the E-Rate contracts in his May 2002 bankruptcy filings or

No. 12-30819

later on to the Chapter 7 trustee. We review the district court's findings for clear error and legal conclusions *de novo.*

## DISCUSSION

### A. Statute of Limitations

Curtis argues that Smith erroneously advised him to plead guilty to a charge for which the applicable statute of limitations had already run and that Smith's advice was a direct result of his failure to adequately research the issue in advance of Curtis's plea hearing. The success of Curtis's argument hinges on whether the statute of limitations had in fact run as of July 23, 2008—the date that Curtis was charged with bankruptcy fraud. In addressing this issue, the district court specifically found that the statute of limitations had not run and that the indictment against Curtis was timely.

According to Federal Rule of Criminal Procedure 45(a)(1)(A), when a criminal statute specifies a period of time either in days or in a longer unit of time but does not set forth how that period of time is to be computed, "the day of the event that triggers the period" is to be excluded from computation of the time period itself. Title 18 U.S.C. § 3282(a), under which Curtis was prosecuted, arguably falls under Rule 45(a) because it specifies the relevant period of time in years: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, *unless the indictment is found . . . within five years next after such offense shall have been committed*" (emphasis added). Curtis argues, however, that 18 U.S.C. § 3284 sets forth a separate "method of computing time" for a bankruptcy fraud charge that exempts his indictment from Rule 45(a): "The concealment of assets of a debtor in a case under title 11 shall be deemed to be a continuing offense until the debtor shall have been finally discharged or a discharge denied, and *the period of limitations shall not begin to run until such final discharge* or denial of discharge" (emphasis added). Curtis contends that

6

the phrase, "shall not begin to run until such final discharge," constitutes a method of computing time within the meaning of Rule 45(a), therefore, the statute of limitations on his charge of bankruptcy fraud began running on the day he was discharged from bankruptcy—July 23, 2003—and expired five years later on July 22, 2008.  Curtis offers no support, legal or otherwise, for this argument.

Considering the statutes at issue, we conclude that Section 3284 does not specify a method of computing time, and Rule 45(a) applies.  The statute of limitations for Curtis's offense began running the day *after* his bankruptcy discharge—July 24, 2005—making the indictment against him timely.  This is further supported by the fact that calling an offense a continuing crime "until" the date of discharge necessarily implies that the defendant continues to conceal assets even on the date of discharge from bankruptcy.  *See* 18 U.S.C. § 3284.

Further, while few courts have considered what type of language qualifies as "specify[ing] a method of computing time" for purposes of Rule 45(a), they have found that statutory language similar to that in Section 3284 does *not* specify a method of computing time.  *See United States v. Liounis*, No. 12 CR 350 ILG, 2013 WL 5596014 at *1 (E.D.N.Y. Oct. 11, 2013) (finding that Rule 45(a)(1)(A) applies to the Speedy Trial Act, which provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested," because the Act is "silent" on *how* the period of time is to be computed); *United States v. Reyes*, No. 05-CR-00534-01, 2012 WL 4641698 at *14 n.52 (E.D. Pa. Sept. 28, 2012) (same); *Davis v. United States*, No. 1:06CR127, 2010 WL 2232411 at *4-*5 (N.D. Ohio May 26, 2010) (same). The magistrate judge cited *United States v. Dolan*, 120 F.3d 856, 867-68 (8th Cir. 1997), in his report and recommendation as supporting the position that

No. 12-30819

"the limitations period for initiating prosecution for bankruptcy fraud begins to run *on the date of discharge* (or denial of discharge)." *U.S. v. Curtis*, No. 1:08-CR-00207, 2011 WL 8197682 at *7 (W.D. La. Aug. 9, 2011) (emphasis added). However, *Dolan* is readily distinguishable from the case at hand because the issue in *Dolan* was whether grounds for terminating a bankruptcy case, e.g. dismissal, could trigger a concealment of assets conviction.

Because Curtis's indictment was timely, he cannot show that he was prejudiced by Smith's failure to research the applicable statute of limitations in advance of Curtis's guilty plea. *Strickland*, 466 U.S. at 687. Therefore, Curtis's ineffective assistance of counsel claim fails on this ground.

**B. Failure to Consult Attorney Willson**

Curtis asserts that Smith also rendered ineffective assistance by failing to adequately investigate Curtis's criminal case. This argument centers on the fact that Smith never contacted Willson to learn about Curtis's bankruptcy case, the conduct of which underlies Curtis's offense. A defendant must rely on more than bare allegations about counsel's failure to interview or produce a witness and must show that the witness's testimony, if offered, would have been exculpatory. *See United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) ("To establish [a] failure to investigate claim, [a defendant] must allege with specificity what the investigation would have revealed *and how it would have benefitted him.*" (emphasis added)); *U.S. v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed *and how it would have altered the outcome of the trial.*" (emphasis added)). Curtis assumes that if Smith had contacted Willson, Smith would have learned that Curtis had two viable defenses to the charge of bankruptcy fraud, which in turn would have affected Curtis's decision to plead guilty.

No. 12-30819

First, Curtis asserts that he relied in "good faith" on Willson's advice to undervalue the Gen-I-Tech stock that Curtis listed on his bankruptcy schedule of assets and to exclude from the stock's value the worth of Gen-I-Tech's contract with Westside. To the extent that advice of counsel may be relied upon to negate the *mens rea* of a specific intent crime, such advice must be "given on full disclosure of all the facts." *United States v. Carr*, 740 F.2d 339, 347 (5th Cir. 1984); *see also United States v. Martorano*, 767 F.2d 63, 66 (3d Cir. 1985). Assuming *arguendo* that Willson did advise Curtis in the manner alleged, Curtis has not established that he fully disclosed to Willson all of the pertinent facts that may have affected Willson's advice on the matter, particularly Gen-I-Tech's contract with Westside. The magistrate judge did not find that Willson knew about the Westside contract before Curtis filed for bankruptcy, whereas the district court specifically found that "Mr. Willson had no information regarding the contracts that Mr. Curtis fraudulently concealed," "Mr. Curtis fraudulently concealed the contracts at issue from Mr. Willson," and "Mr. Willson had no knowledge of the outstanding contracts." *U.S. v. Curtis*, No. 08-207, 2012 WL 2792357 at *2 (W.D. La. July 5, 2012). Curtis does not argue that the court's factual findings in this regard are "clearly erroneous," nor does the record suggest that they are implausible. *See United States v. Underwood*, 597 F.3d 661, 665 (5th Cir. 2010); *Walker v. City of Mesquite, Tex.*, 402 F.3d 532, 535 (5th Cir. 2005). Curtis has not carried his burden of demonstrating that he relied in good faith on Willson's advice. Therefore, even if Smith had investigated Willson as a potential witness, it would not have sealed Curtis's defense or made it any more reasonable for Curtis to go to trial.[1]

---

[1] In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of

No. 12-30819

Second, Curtis contends that he had an additional defense of actual innocence because Curtis was not required to list Gen-I-Tech's contract with Westside, a corporate asset, on his personal bankruptcy schedules.[2] Although the government concedes that the Westside contract did not have to be listed on Curtis's petition, the government still asserts that Curtis was obligated to include the contract's monetary worth in the value listed for his Gen-I-Tech stock. When Curtis filed for bankruptcy in March 2002, he had a duty to accurately value the Gen-I-Tech stock listed on his bankruptcy schedule. Whether Curtis broke the law by undervaluing the Gen-I-Tech stock based on the then-uncertain legal status of funding for the Westside contract is unclear. In any event, the government's position is that Curtis had a duty to inform the Chapter 7 trustee, who took over Curtis's case in March 2003, that the Westside contract was approved for funding and that Gen-I-Tech had begun receiving income as a result. Curtis, on the other hand, contends that he did not have to file amended schedules to reflect Gen-I-Tech's increased income from the Westside contract. Curtis bases his argument on Willson's testimony during the § 2255 hearing that pursuant to the "snapshot" theory of

---

counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Hill v. Lockhart*, 474 U.S. 52, 60, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

[2] Although the parties repeatedly refer to Gen-I-Tech's contracts with Westside, Lafayette, the Youth Challenge Program, and the Job Challenge Program throughout their papers, we only consider the Westside contract for purposes of this appeal because the USAC did not commit to funding the remaining three contracts until after Curtis was discharged from bankruptcy.

bankruptcy valuations, when a case converts from Chapter 13 to Chapter 7, the property in the debtor's estate relates back to the property that was in the debtor's estate as of the date that the case was originally filed. *See* 11 U.S.C. § 348(f)(1)(A) (stating that upon conversion of a case from Chapter 13 to another chapter, the property of the debtor's estate is the same property that was in the debtor's estate as of the date of the filing of the petition, so long as such property "remains in the possession of" the debtor). *See also In re Stamm*, 222 F.3d 216 (5th Cir. 2000).

The snapshot approach is not applicable in the instant case. First, as the government notes, under 11 U.S.C. § 541(a)(6), the debtor's estate incudes all proceeds, product, offspring, rents, or profits of the debtor's property that accrue after the filing, and under Section 521(a)(4), the debtor is required to turn over all property of the estate and all books, records, etc. when the Chapter 7 trustee takes over. Gen-I-Tech remained a corporation whose stock was wholly owned by Curtis throughout the bankruptcy case. The stock's value increased with the culmination of the Westside contract funding. Curtis did not inform the trustee of the stock's increase in value, and the stock should have been subject to the trustee's control. Even Willson admitted that if he had known about the contract and the payments as of March 2003, he would have wanted to inform the trustee.

Moreover, the Chapter 7 trustee testified at the Section 2255 hearing that Curtis told him Gen-I-Tech's only assets were a computer and an old truck. Curtis testified during the same hearing that his income from Gen-I-Tech was $4000 a month.[3] That Gen-I-Tech generated enough income to support such a salary should have raised a red flag about the stock's value or

---

[3] Curtis's salary was not subject to the Chapter 7 bankruptcy proceedings. *See* 11 U.S.C. 541(a)(6); *In re Stamm*, 222 F.3d 216, 217 (5th Cir. 2000).

business to either Willson or the Chapter 7 trustee.  In any event, the testimony of both Curtis and the trustee reinforces the district court's finding that Curtis was deliberately undervaluing Gen-I-Tech in order to secure a "no asset" discharge and keep the corporate revenue for himself.

As to Curtis's defenses of good faith reliance and actual innocence, he has failed to show that had Smith contacted Willson during the post-indictment period, what Smith would have learned would have persuaded him to advise Curtis not to plead guilty and insist on going to trial.

**C. Failure to Receive and/or Review Discovery**

Last, Curtis argues that Smith rendered ineffective assistance because he advised Curtis to plead guilty without reviewing discovery documents or really understanding what Curtis was pleading guilty to.  It is undisputed that (1) Smith does not recall looking at the bankruptcy petition, upon which Curtis's criminal proceedings were largely based, at any point during Curtis's case, (2) neither Curtis nor Smith knew before Curtis's plea hearing that Curtis would be pleading guilty to concealing four contracts instead of just one, and (3) there is no evidence that Smith actively investigated Curtis's case or sought discovery before the plea hearing.  However, while Smith's performance as counsel was less than commendable, *Strickland*, 466 U.S. at 687, Curtis has failed to demonstrate that he was prejudiced by such deficient performance. *Id.*  Notably, Curtis does not even assert that if Smith had received and reviewed discovery prior to the plea hearing, Curtis would not have pleaded guilty.  Accordingly, Curtis's ineffective assistance of counsel claim fails on this ground.

Based on the foregoing analysis the judgment of the district court is **AFFIRMED**.