# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1577SI

_____

United States of America,

        Appellee,

v.

Albert A. Wheeldon,

        Appellant.

\*
\*
\*
\*
\* On Appeal from the United
\* States District Court
\* for the Southern District
\* of Iowa.
\*
\*
\*

_____

Submitted: October 8, 2002
Filed:   December 27, 2002

_____

Before BOWMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


This appeal involves a 30 month sentence imposed on Albert Wheeldon for committing bankruptcy fraud. One of the principal factors determining the sentence under the Guidelines is the amount of loss inflicted by the fraud. See U.S.S.G. § 2B1.1(b). Sometimes the computation of loss is complicated. What happens, for example, if the actual loss differs from the intended loss? In general, under Application Note 2 to the Guideline just cited, loss means the greater of actual loss or intended loss. In the present case, there was no actual loss: the discharge that Mr. Wheeldon was attempting to obtain in bankruptcy by fraud was never granted. So the

issue is the amount of the intended loss. Here, the defendant concealed the value of certain assets. The total amount of debt for which he sought discharge was a larger figure. Which of these two numbers is the intended loss for Guidelines purposes? The District Court held, in accordance with the position taken by the government, that the larger figure, the total amount of debt for which discharge was sought, was the relevant one. With respect, we disagree. The sentence will be vacated, and the cause remanded for further proceedings in accordance with this opinion.

## I.

Albert Wheeldon applied for and received social security disability benefits in late 1990. The benefits were to be terminated if he regained the ability to work. Mr. Wheeldon began to operate a small lawn-care service around that time. His services included mowing lawns, removing snow, and so forth. It is not clear exactly how much revenue his business generated. For each of the years 1997 through 2000, the defendant deposited between $10,000 and $20,000 into his checking account. He received disability benefits while running his small business for a decade. Eventually a neighbor reported Mr. Wheeldon's fraud to the Inspector General, who began an investigation.

In November of 2000, Mr. Wheeldon filed a Chapter 7 bankruptcy petition. He represented that he had no assets or income. Two months later he sold his lawn-care equipment and customer list for $8,500. He was indicted for theft of government property (wrongfully received disability benefits), making false statements to the Social Security Administration, concealing assets from his creditors, and making false statements in his bankruptcy filings. A jury found him guilty on all counts. He was sentenced to 30 months in jail to be followed by three years of supervised release.

The Sentencing Guidelines require the trial court to determine the extent of the loss the defendant intended to inflict. See U.S.S.G. § 2B1.1 & App. Note 2 (2000).

Mr. Wheeldon sought to have $139,528.71 in debts discharged in his bankruptcy. The District Court said:

> I think, at least under my reading of the law, and as a finding of fact, I'm going to find that the intention of the defendant was to deprive the government and [his] creditors . . . of . . . the amount of $139,528.71. That, I'm going to find that's the loss of this case that's attributable to the defendant, and I think the Seventh Circuit case in <u>Parsons</u>, the circuit's two opinions in <u>Edgar</u> and <u>Dolan</u> make it so that I have to make that finding.

Sentencing Tr. 33. Under Sentencing Guideline § 2F1.1(b)(1)(H) (2000), this finding of fact resulted in a seven-level increase in Mr. Wheeldon's base offense level.[1] His final offense level was nineteen. He argues that the most he could have intended his creditors to lose was $64,600.70, the assets of his lawn-care business and the amount he received in disability benefits.

II.

The interpretation of the Sentencing Guidelines is a question of law. <u>United States v. Willis</u>, 997 F.2d 407, 417 (8th Cir. 1993). In this case, where the property concealed from creditors was worth a great deal less than the total amount of debt sought to be discharged, what is the measure of intended loss?

We have already referred to Application Note 2. Under this provision and our opinion in <u>United States v. Dolan</u>, 120 F.3d 856, 870 (8th Cir. 1997), the probable intended loss should be used if that amount is larger than the actual loss. Here, however, Mr. Wheeldon's fraud was discovered, a discharge in bankruptcy was

---

[1]We apply the Sentencing Guidelines in effect on November 1, 2000, in this case.

refused, and his bankruptcy petition was dismissed. His creditors therefore never suffered an actual loss on account of the fraud. The relevant figure for sentencing purposes is therefore the intended loss.

In Dolan, the value of the concealed asset was greater than the amount of the debt sought to be discharged. We held that the relevant figure for sentencing purposes was the amount of the debt. This was an upper limit on what the creditors could possibly have lost, and therefore an upper limit on both intended loss and actual loss.[2] In Dolan, in a bankruptcy-fraud situation, the intended loss was the lesser of the value of the assets concealed and the value of the debtor's liabilities. 120 F.3d at 870.[3]

It belies reality to argue that Mr. Wheeldon, or a debtor similarly situated, intended to defraud his creditors of everything he owed them solely because he failed to disclose all of his (rather modest) assets. Suppose Mr. Wheeldon owed creditors a million dollars. He filed a petition in bankruptcy seeking a discharge, which would

---

[2]Under U.S.S.G. § 2B1.1, Application Note 2(A)(ii)(II) (2002), intended loss is said to include "intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." We think that these instances are distinguishable from the present situation. When the government is conducting a sting operation, for example, the defendant presumably does not know about it. His subjective intention is to produce a certain loss, despite the fact that, because he is dealing with the government, that loss will never actually occur. Here, however, defendant knew, as well as anybody did, the value of his lawn-care equipment and customer list. He could not have intended to deprive his creditors of more than that value.

[3]The government points out that the case cited in Dolan for this proposition, United States v. Edgar, 971 F.2d 89, 95 (8th Cir. 1992), does not explicitly support it. This is true, but the fact of the Dolan holding remains, and we are bound by it. In any event, we believe the rule stated is sound.

of course have covered the entire million. He represented that he had nothing. In fact, he did have a few hundred dollars worth of assets, which he concealed from the court. We cannot agree that the debtor's intention, in these circumstances, was to inflict a loss of a million dollars. The government rightly emphasizes that concealment of the lawn-care business as an asset was not the only count of bankruptcy fraud on which Mr. Wheeldon was convicted. He was also misleading about whether he was engaged in any business. But the material misrepresentation to creditors must be limited to the assets they would have known about if the petition had been truthful. Only that amount can be the intended loss for Guidelines purposes.

We have noted that, about two months after the filing of the bankruptcy petition, Mr. Wheeldon sold his lawn-care business for $8,500.00. That is certainly some evidence of what the business was worth. It is not necessarily conclusive. The District Court will be free, on remand, to conduct additional proceedings to determine the value of Mr. Wheeldon's entire estate, and, in doing so, to consider such further evidence, if any, as either side wishes to offer.

The judgment is reversed, and the cause remanded to the District Court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-