# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3364

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Wayne Douglas Shevi, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  May 16, 2003

Filed:  September 30, 2003

_____

Before LOKEN, Chief Judge, FAGG and MURPHY, Circuit Judges.

_____

LOKEN, Chief Judge.

Wayne Shevi pleaded guilty to mail fraud in violation of 18 U.S.C. § 1341, structuring cash transactions in violation of 31 U.S.C. § 5324(a)(3), and five counts of filing false tax returns in violation of 26 U.S.C. § 7206(1).  At sentencing, the district court found the mail fraud loss to be $305,133.38 under U.S.S.G. § 2F1.1; imposed an abuse of trust enhancement under U.S.S.G. § 3B1.3 because Shevi defrauded his niece and nephew of trust funds; and declined to group the mail fraud and tax offenses under U.S.S.G. § 3D1.2.  Shevi appeals those rulings.  We affirm the abuse of trust enhancement and the decision not to group the mail fraud and tax offenses.  We conclude that the district court's fraud loss calculation was inconsistent

with our supervening decision in <u>United States v. Wheeldon</u>, 313 F.3d 1070 (8th Cir. 2002). Accordingly, we remand for resentencing.

## I. The Offenses.

The only witness at Shevi's contested sentencing hearing was James Shoup, an experienced Special Agent with the Criminal Investigation Division of the Internal Revenue Service. Neither party included the exhibits introduced at sentencing in the record on appeal. Agent Shoup described Shevi's offenses as follows.

Shevi petitioned for bankruptcy relief in August 1992. He failed to list all of his assets and fraudulently obtained the discharge of a $256,000 loan secured by a Carver pleasure boat and $22,320 owed to various unsecured creditors. The discharged debts totaled $278,320. Agent Shoup generally described some of the assets Shevi fraudulently concealed from the bankruptcy court, but the government did not attempt to prove the value of those concealed assets.

When Shevi's sister died, he became the trustee of monthly social security benefits paid to his niece and nephew, both minors. Shevi then purchased two life insurance policies, naming himself as beneficiary, and used trust funds to pay the premiums. A few months before his 1992 bankruptcy, Shevi transferred the policies to his wife, omitted them from his scheduled bankruptcy assets, and obtained the cash surrender values. After the bankruptcy discharge, Shevi invested these insurance proceeds in a personal investment account. The insurance proceeds, less amounts Shevi paid to his niece and nephew in a pre-indictment settlement of their trust fund claims, totaled $26,813.38.

Shevi's financial structuring conviction stemmed from a series of twenty-one transactions at two banks that were structured to avoid the currency transaction reporting requirements of 31 U.S.C. § 5313. The twenty-one transactions totaled

$196,667. In addition to these mail fraud and structuring offenses, Shevi pleaded guilty to filing false individual and business tax returns that enabled him to evade a total of $134,959.72 in tax liability.

## II. The District Court's Sentencing Determinations.

In sentencing Shevi, the district court used the 1997 version of the Sentencing Guidelines.[1] The court added the debts discharged in bankruptcy to the net trust funds embezzled, producing a total mail fraud loss of $305,133.38. Shevi appeals this determination. The court determined that the total amount of structured transactions was $196,667 and the total tax fraud loss was $134,959.72. These determinations are not contested on appeal.

To determine Shevi's sentence, the district court grouped the mail fraud and structuring counts under U.S.S.G. § 3D1.2(c) but placed the tax counts in a separate group. The fraud loss exceeded $200,000, so the court added eight offense levels for the amount of loss under U.S.S.G. § 2F1.1(b)(1)(I). Together with other adjustments, that produced a total offense level of 22 for the mail fraud offense. As 22 exceeded the offense level for the structured transactions offense, 22 became the offense level for Group I, the mail fraud and structured transactions group. Group II was the tax counts. The tax loss exceeded $120,000, so the court determined a base offense level of 15 and a total offense level of 17 for Group II. See U.S.S.G. § 2T4.1(J). The court then added one offense level to the offense level applicable to Group I for the multiple group adjustment required by U.S.S.G. § 3D1.4, and subtracted two offense levels for acceptance of responsibility. This resulted in a combined offense level of 21 and a guidelines sentencing range of 37-46 months. The court sentenced Shevi to 42 months on the mail fraud and structuring counts and a concurrent 36 months on

---

[1]Unless otherwise noted, all citations to guideline provisions in this opinion refer to the provisions in effect on November 1, 1997.

each of the tax counts. The court also ordered restitution in the amount of $160,106.38 -- $26,813 embezzled from the trust, $22,320 in discharged unsecured creditor debt, and the secured lender's $110,973 net loss on the Carver boat loan after foreclosing on the boat.

### III. The Mail Fraud Loss Issue.

Shevi argues the district court erred in calculating the portion of the total mail fraud loss attributable to his bankruptcy fraud. The government concedes that the actual loss attributable to the Carver boat loan is the secured lender's net loss after sale of the collateral, $110,973, not the total debt of $256,000 that was discharged in bankruptcy. See § 2F1.1, comment. (n. 7(b)). This adjustment reduces the actual loss resulting from the bankruptcy fraud from $278,320 to $133,293. If the total mail fraud loss is correspondingly reduced, and if all other sentencing factors remain unchanged, Shevi's combined offense level would fall from 21 to 20, which would reduce his guidelines sentencing range to 33-41 months, below the 42-month sentence imposed by the district court.

Mail fraud loss under § 2F1.1 is the greater of the loss the defendant intended to inflict and the actual loss inflicted. See § 2F1.1, comment. (n. 7); United States v. Anderson, 68 F.3d 1050, 1054 (8th Cir. 1995). To avoid the impact of the above-described error in calculating actual loss, the government first argues that Shevi *intended* to discharge the entire Carver boat debt, leaving the secured lender to its own devices, and therefore $256,000 was the intended loss. Agent Shoup testified that Shevi stripped the Carver boat of various accessories before filing for bankruptcy, suggesting that he knew the secured lender would foreclose on the boat to reduce its actual loss. However, intended loss is a question of fact reviewed for clear error. Anderson, 68 F.3d at 1054. Thus, the district court may address this issue in the first instance on remand.

Next, the government argues that, even if the district court erred in determining that the total mail fraud loss exceeded $200,000, the fraud loss at least includes the $133,293 left unpaid to Shevi's creditors following his fraudulent bankruptcy, and therefore the loss calculation error is harmless because the multiple grouping rules would offset this error with a one-level increase to the combined offense level under § 3D1.4. The government's interpretation of the complex multiple grouping rules may well be correct.[2] However, its assertion that the revised bankruptcy fraud loss is at least $133,293 cannot be upheld on this sentencing record.

When a defendant has concealed assets to perpetrate bankruptcy fraud, the intended loss normally may not exceed the value of the liabilities the debtor hoped to discharge or otherwise avoid. See United States v. Dolan, 120 F.3d 856, 870 (8th Cir. 1997); United States v. Edgar, 971 F.2d 89, 95 (8th Cir. 1992). If the concealed assets were worth less than the debts sought to be discharged, the intended fraud loss is limited to the value of the concealed assets the creditors would presumably have recovered, not the total amount of their debts. Wheeldon, 313 F.3d at 1073. On the other hand, if the debtor's concealed assets plus his disclosed assets totaled more than his debts, then asset concealment was essential to establishing insolvency, and the debtor was not entitled to bankruptcy protection at all. In this situation, the defrauded creditors may have incurred consequential damages that should be included in calculating fraud loss. See § 2F1.1, comment. (n. 7(c)).

In Wheeldon, the debtor was clearly insolvent, and the concealed assets were worth far less than his scheduled debts. In this case, the net debts discharged in Shevi's fraudulent bankruptcy, taking into account what the secured creditor realized

---

[2]The total offense level for Group I would fall from 22 to 21, while the total offense level for Group II would remain at 17. Under § 3D1.4, this closing of the gap between the two groups would increase Group II from ½ to 1 unit, which would increase the multi-group adjustment from 1 level to 2 levels, thereby offsetting the reduced offense level for Group I and keeping the combined offense level at 21.

in foreclosing on the Carver boat, totaled $133,293. But the district court made no finding as to the value of the assets Shevi concealed, and the record on appeal does not permit us to determine if they were worth more or less than the debts left unpaid. Therefore, we may not accept the government's assertion that the fraud loss, at a minimum, totaled $133,293. The case must be remanded for redetermination of the mail fraud loss. As in Wheeldon, 313 F.3d at 1073, the district court is free to accept and consider further evidence regarding the value of Shevi's concealed assets.

## IV. The Abuse of Trust Issue.

In determining the total mail fraud offense level, the district court imposed a two-level increase for abuse of trust because Shevi embezzled funds from his niece's and nephew's trust. Shevi argues (1) the court erred in relying on the hearsay testimony of Agent Shoup, rather than testimony by the victims themselves, and (2) the enhancement does not apply in a family setting such as this. We disagree.

(1) Agent Shoup described the trust arrangement and Shevi's embezzlement of trust funds. He also testified, over Shevi's hearsay objection, to statements made by the niece and her father regarding this relationship. Shevi argues the district court erred in admitting this hearsay, which permitted the victims to avoid cross examination regarding whether they had voluntarily released their claims.

Reliable hearsay evidence may be considered at sentencing. See U.S.S.G. § 6A1.3(a) p.s.; United States v. Wise, 976 F.2d 393, 402 (8th Cir. 1992), cert. denied, 507 U.S. 989 (1993). Shevi relies on United States v. Bougie, 279 F.3d 648, 651 (8th Cir. 2002), where we held that disputed facts relevant to sentencing could not be established solely through an FBI agent's affidavit. But in Bougie, the agent did not testify at the sentencing hearing. Here, Agent Shoup testified, and Shevi had ample opportunity to cross-examine him or to refute the hearsay statements with

defense evidence. In addition, there was ample other evidence supporting the district court's finding that Shevi embezzled $26,813 from the trust.

(2) An adjustment is proper under § 3B1.3 if the defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." A position of public or private trust is one "characterized by professional or managerial discretion." § 3B1.3, comment. (n. 1). Shevi argues that § 3B1.3 does not apply to this "nonbusiness, purely familial position," relying on United States v. Willard, 230 F.3d 1093, 1097 (9th Cir. 2000), where the Ninth Circuit declined to apply § 3B1.3 in sentencing a mother who had instructed her daughter not to testify against the father.

In this case, however, we have more than a "nonbusiness, purely familial" relationship. Shevi served as trustee of social security benefits received by his minor niece and nephew. He had substantial discretion to invest or spend those funds, much like a professional trustee or a financial adviser with discretion to invest. This discretion enabled him to embezzle the funds and made the detection of his offense far more difficult. We conclude that a relative with this degree of control over finances *may* occupy a position of private trust, and that the district court's finding that Shevi occupied a position of private trust in this case was not clearly erroneous. See United States v. Baker, 200 F.3d 558, 564 (8th Cir. 2000) (standard of review). The imposition of a § 3B1.3 adjustment is affirmed.

## V. Grouping Issues.

Chapter 3, Part D, of the Guidelines prescribes the method for determining the combined offense level when a defendant has been convicted of multiple offenses. Section 3D1.1(a) provides that the district court must group closely related counts following the rules in § 3D1.2, determine the offense level applicable to each group under § 3D1.3, and then determine the combined offense level by applying the rules

in § 3D1.4.  See United States v. O'Kane, 155 F.3d 969, 971 (8th Cir. 1998).  As previously explained, the district court grouped the mail fraud and structured transaction counts, declined to group the mail fraud and tax fraud counts, and imposed a one-level multi-group adjustment under § 3D1.4.  Shevi argues the tax fraud counts should have been grouped with the other offenses.[3]

Section 3D1.2 begins by declaring that "[a]ll counts involving substantially the same harm shall be grouped . . . ."  The section then describes in subsections (a)-(d) the four situations in which "[c]ounts involve substantially the same harm within the meaning of this rule."  In this case, subsections (a) and (b) do not apply because Shevi's mail fraud and tax fraud have different victims -- his creditors and niece and nephew on the one hand, and the United States Treasury on the other.  See, e.g., United States v. Thayer, 201 F.3d 214, 225-26 (3d Cir. 1999), cert. denied, 530 U.S. 1244 (2000).  Shevi argues that the tax fraud and mail fraud counts must be grouped under subsection § 3D1.2(c), which provides that offenses must be grouped "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts."  He relies on United States v. Haltom, 113 F.3d 43, 46 (5th Cir. 1997), where the court grouped a tax evasion offense and a mail fraud offense under § 3D1.2(c) in a case where the "offense level for tax evasion was increased by 2 because [defendant's] unreported income was derived from . . . the mail fraud alleged in count one."

A number of other circuits have declined to follow Haltom, instead concluding that tax fraud and mail fraud counts should not be grouped under § 3D1.2(c), even if the defendant received a two-level increase on the tax fraud count for failing to report income derived from the criminal mail fraud.  See United States v. Peterson, 312 F.3d

---

[3]The government argues in its brief that the district court erred in grouping the mail fraud and structured transaction counts but admits it did not object to this ruling in the district court.  Therefore, the issue was not preserved for appeal, and we do not consider it.  See United States v. Filker, 972 F.2d 240, 242 (8th Cir. 1992).

1300, 1303-04 (10th Cir. 2002), and cases cited. We need not address this conflict in the circuits because the offense level for Shevi's tax fraud counts was not increased based upon his conduct that was punished as mail fraud. Thus, the district court properly declined to group these counts under § 3D1.2(c).

That reduces the grouping issue to the fourth subsection, § 3D1.2(d), which requires the grouping of counts for which "the offense level is determined largely on the basis of the total amount of harm or loss."[4] The Second Circuit held that grouping of tax fraud and mail fraud counts is proper under § 3D1.2(d) in <u>United States v. Gordon</u>, 291 F.3d 181, 192 (2d Cir. 2002), <u>cert. denied</u>, 537 U.S. 1114 (2003). Other circuits disagree. <u>See</u> <u>United States v. Lindsay</u>, 184 F.3d 1138, 1142-43 (10th Cir.), <u>cert. denied</u>, 528 U.S. 981 (1999); <u>United States v. Williams</u>, 154 F.3d 655, 656-58 (6th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1113 (1999). When the counts at issue are governed by different offense guidelines, as in this case, the § 3D1.2(d) issue becomes difficult. The offense levels for Shevi's mail fraud and tax fraud offenses are both largely based on the amount of harm or loss. <u>See</u> U.S.S.G. §§ 2F1.1(a)-(b), 2T1.1, 2T4.1. But to be grouped under § 3D1.2(d), the offenses must also be "of the same general type." § 3D1.2, comment. (n.6). Application Note 6 provides illustrations but does not define when offenses are of the same general type.

In <u>United States v. Hildebrand</u>, 152 F.3d 756, 763 (8th Cir.), <u>cert. denied sub nom.</u> <u>Webb v. United States</u>, 525 U.S. 1033 (1998), we rejected the government's contention that fraud and money laundering offenses should be grouped under § 3D1.2(d). Though the offense levels of both are largely based on the amount of harm or loss, money laundering offense levels are higher, so the effect of § 3D1.2(d)

[4]Shevi does not argue for grouping under § 3D1.2(d). When counts are grouped under this subsection, the applicable offense level "is the offense level corresponding to the aggregated quantity" of harm. U.S.S.G. § 3D1.3(b); <u>see</u> <u>O'Kane</u>, 155 F.3d at 973. Thus, grouping under § 3D1.2(d) might not result in a lower total offense level for the combined offenses. <u>See</u> § 3D1.3, comment. (n. 3).

grouping would be to sentence the entire fraud loss at the higher money laundering offense levels, even if the entire fraud loss was not laundered. The same reasoning applies here, where the tax offense loss table in § 2T4.1 imposes higher offense levels than the mail fraud loss table in § 2F1.1(b). When the loss tables for two offenses punish the same amount of loss differently, the offenses are not "of the same general type" for purposes of § 3D1.2(d). Therefore, the district court correctly declined to group Shevi's mail fraud and tax fraud counts.

The judgment of the district court is reversed, and the case is remanded for further sentencing proceedings not inconsistent with this opinion.

_____