# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2843

_____

United States of America,        *
                                        *

            Appellee,        *

                                        *   Appeal from the United States
      v.                    *   District Court for the
                                        *   Northern District of Iowa.

August L. Holthaus, Jr.,      *

                                        *

            Appellant.      *

                                        *

_____

Submitted:  February 13, 2007
Filed:  May 25, 2007

_____

Before RILEY, MELLOY, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge.

August Holthaus, Jr. (Holthaus) pled guilty to knowingly and fraudulently making a false declaration or statement in connection with his bankruptcy petition, in violation of 18 U.S.C. § 152(3). The district court[1] sentenced Holthaus to 5 months' imprisonment followed by 5 months' home detention during 3 years' supervised release. The court also ordered mandatory restitution of $8,093.02, pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, for uncompensated

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

legal services and out-of-pocket expenses. Holthaus appeals his sentence and the restitution order. We affirm.

## I.     BACKGROUND

Holthaus filed a bankruptcy petition under Chapter 7 of the United States Bankruptcy Code in October 2002 and failed to report various assets and liabilities. The bankruptcy court denied the discharge of Holthaus's debts because Holthaus failed to disclose his assets truthfully. On July 27, 2005, Holthaus was indicted for knowingly and fraudulently making a false declaration or statement under penalty of perjury in his voluntary bankruptcy petition. He pled guilty on September 15, 2005.

At sentencing, the parties agreed Holthaus concealed the following assets valued at $54,478.57: an inheritance ($36,023.35), gambling winnings ($1,400), a tractor ($5,000), a cabin ($4,000 in equity), accounts receivable ($7,855.22), and a shotgun ($200). Holthaus admitted he intended to defraud creditors when he failed to list the accounts receivable and the shotgun, but denied such intent when concealing the tractor, cabin, inheritance, and gambling winnings. In response, the government argued the circumstances surrounding the concealment evidenced Holthaus's intent to inflict a loss upon his creditors of the full $54,478.57 in income and assets.

The district court determined the intended loss to be $54,478.57 based on the total value of the assets and income Holthaus fraudulently concealed. The district court calculated a base offense level of 6 under U.S.S.G. § 2B1.1(a). The court then added a six-level increase pursuant to § 2B1.1(b)(1)(D) for intending a loss of more than $30,000, and a two-level increase under § 2B1.1(b)(7)(B) for misrepresentation or fraud during a bankruptcy proceeding. The court also departed downward two levels for acceptance of responsibility. Holthaus's adjusted offense level of 12, together with a criminal history category of I, resulted in an advisory Sentencing Guidelines range of 10 to 16 months.

On appeal, Holthaus challenges the district court's finding that Holthaus intended to defraud his creditors of more than $30,000, which resulted in a six-level increase under § 2B1.1(b)(1)(D). Holthaus argues he did not intend to defraud his creditors of more than $8,055.22, which would have resulted in an advisory Sentencing Guidelines range of only zero to 6 months. Holthaus also appeals the district court's restitution order.[2]

## II.    DISCUSSION

### A.    Intended Loss for Sentencing Purposes

We review de novo the district court's interpretation and application of the advisory Sentencing Guidelines. United States v. Rouillard, 474 F.3d 551, 555 (8th Cir. 2007). We review for clear error the district court's factual determinations of loss. United States v. Levine, 477 F.3d 596, 603 (8th Cir. 2007).

"Loss" means the greater of either "actual loss" or "intended loss." U.S.S.G. § 2B1.1, cmt. n.2(A). Because the bankruptcy court refused to discharge Holthaus's debt, no actual loss resulted from Holthaus's fraud. See United States v. Wheeldon, 313 F.3d 1070, 1072 (8th Cir. 2002). Thus, we look to the probable intended loss for purposes of Holthaus's sentence increase under § 2B1.1(b)(1). See id. "The government must prove the intended loss by a preponderance of the evidence." United States v. Staples, 410 F.3d 484, 490 (8th Cir. 2005). The intended loss is the pecuniary harm Holthaus "intended to result from [his] offense," and it includes "harm that would have been impossible or unlikely to occur." U.S.S.G. § 2B1.1 cmt.

---

[2]Holthaus further raises and preserves the issue that disputed sentencing fact issues increasing the Sentencing Guidelines range must be determined beyond a reasonable doubt. This issue is decided to the contrary by precedent. See United States v. Garcia-Gonon, 433 F.3d 587, 593 (8th Cir. 2006) ("Under an advisory Guidelines regime, sentencing judges are only required to find sentence-enhancing facts by a preponderance of the evidence.").

n.2(A)(ii). The district "court need only make a reasonable estimate of the loss . . . based on available information." U.S.S.G. § 2B1.1 cmt. n.2(C).

Holthaus argues this intended loss for sentencing purposes was $8,055.22 – the combined value of the accounts receivable and the shotgun, excluding the inheritance, gambling winnings, cabin, and tractor.

In discussing our decisions in Wheeldon and United States v. Dolan, 120 F.3d 856 (8th Cir. 1997), the parties each mischaracterize precedent when explaining the calculation of intended loss. In Dolan, the defendant committed bankruptcy fraud, concealing $1,985,000 in assets. Dolan, 120 F.3d at 862. The bankruptcy petition set forth $1,376,558.91 in total liabilities, $446,500 in property, and $590,000 in arranged settlements with creditors. Id. at 870-71. This left a discharge amount of approximately $340,000. By virtue of concealing nearly $2 million, the debtor appeared eligible for the requested discharge of approximately $340,000 in reported debt, thereby intending a loss to creditors of $340,000.

Indeed, Dolan also represented the rare situation in which the value of the concealed assets alone equaled more than the amount to be discharged. Id. Under those circumstances, we concluded intended loss should be calculated "by using either the value of the assets concealed or the value of the debtor's liabilities, whichever is less." Id. at 870. This conclusion follows the general rule that intended loss usually does not exceed the value of the debts sought to be discharged or otherwise avoided. See id.; see also United States v. Edgar, 971 F.2d 89, 95 (8th Cir. 1992) (capping intended loss at the amount of debt when "the value of the concealed property exceeds the amount of debt owed to the creditors"). Because the defendant's fraudulent concealment in Dolan potentially could have effectuated a discharge of the debtor's reported remaining liabilities of $340,000, the total discharge amount established "intended loss." See Dolan, 120 F.3d at 870-71.

Standing in contrast to the facts of <u>Dolan</u>, in <u>Wheeldon</u>, the debtor filed for bankruptcy, reporting no assets while concealing approximately $64,600 in assets. <u>Wheeldon</u>, 313 F.3d at 1072. The concealed assets were worth much less than the debtor's discharge amount of approximately $139,500. <u>Id.</u> Because the total value of the debtor's concealed assets plus disclosed assets was *less* than the total liabilities the debtor petitioned to discharge or avoid, the debtor's concealment did not affect his actual insolvency status. The debtor's illegal concealment of assets could not have effectuated discharge of his entire debt, so the intended loss did not encompass the entire discharge amount. <u>See</u> <u>id.</u> at 1073. Instead, the debtor's intended loss extended only to the value of the assets he hid from his creditors. <u>Id.</u> (limiting intended loss "to the assets [creditors] would have known about if the petition had been truthful").[3]

When determining intended loss, we look to the amount of loss a defendant actually intended to cause his creditors. <u>See</u> <u>United States v. Wells</u>, 127 F.3d 739, 747 (8th Cir. 1997) (acknowledging actual intent controls, and when "a court determines either that the defendant intended to succeed to the full extent of the fraud, or that there was no evidence that the defendant intended to cause less than the greatest possible loss . . . in those circumstances, the intended loss can properly be measured by the possible loss"); <u>see</u> <u>also</u> <u>Staples</u>, 410 F.3d at 490. There is no blanket rule defining intended loss as the lesser of the value of assets concealed or the value of the debtor's liabilities. Indeed, some factual scenarios may require an intended loss calculation based on the *greater* of the value of the assets concealed or debt sought to be discharged. <u>See</u> <u>United States v. Shevi</u>, 345 F.3d 675, 679 (8th Cir. 2003) (noting "if the debtor's concealed assets plus his disclosed assets totaled more than his debts,

---

[3]The intended loss in <u>Wheeldon</u> also happened to be the lesser of the value of assets concealed or total discharge amount. Despite this parallel, we merely acknowledged the calculation used in <u>Dolan</u> and qualified the calculation by explaining the factual context of <u>Dolan</u>. <u>See</u> <u>Wheeldon</u>, 313 F.3d at 1072-73, 1073 n.3. We did not apply the statement made in <u>Dolan</u> as a categorical rule, although we believed "the rule stated is sound." <u>Id.</u> at 1073 n.3

-5-

then asset concealment was essential to establishing insolvency, and the debtor was not entitled to bankruptcy protection at all"). Even if the value of the assets concealed is less than the discharge amount, when a defendant's fraudulent concealment creates an illusory eligibility for bankruptcy, intended loss extends to the entire discharge amount because he intends his crime to effectuate the improper discharge of all the reported debt.

### 1. Concealed Assets

Holthaus argues the district court erred by including his $36,023.35 inheritance in the loss calculation[4] because the government failed to prove Holthaus retained any of the income when he filed for bankruptcy or spent it in contemplation of bankruptcy. Holthaus claims he spent this income before filing for bankruptcy and therefore could not have intended to deprive his creditors of income he knew was unavailable to them.

The district court properly rejected this argument as self-serving. See Dolan, 120 F.3d at 871. The record indicates Holthaus forestalled the bankruptcy trustee in locating his income, and it remained unclear throughout the sentencing hearing where the income went. Holthaus asserts he made certain purchases after receiving the inheritance income but before filing for bankruptcy and argues these purchases constitute circumstantial evidence he spent the income. The trustee testified, after spending an extra fifty hours of investigation, Holthaus's dishonesty coupled with his lack of cooperation left the trustee unable to agree with Holthaus's assertion the money had all been spent before Holthaus filed for bankruptcy. The district court credited the trustee's testimony, stating the trustee may have been able to recoup some of the creditors' losses had Holthaus been forthcoming about the location of his inheritance, explaining "this is the very reason why the bankruptcy statutes require

---

[4]Although Holthaus also argues the district court improperly included in the loss calculation his gambling winnings, tractor, and interest in the cabin, the classification of Holthaus's inheritance is the critical issue in this case, as that amount alone was greater than $30,000.

persons to not only disclose their assets, but also recent income." The court found that in concealing his inheritance income, Holthaus "hindered the trustee and bought himself time to spend the inheritance." The district court's credibility determinations are virtually unreviewable by this court. United States v. Agboola, 417 F.3d 860, 869 (8th Cir. 2005).

Holthaus argues the government failed to meet its burden because the trustee could not find his income. Under the circumstances here, the government need not prove a negative. See Rogers v. United States, 367 F.2d 998, 1000 (8th Cir. 1966). We decline Holthaus's invitation to reward defendants who are particularly skilled at hiding their income. See United States v. Piggie, 303 F.3d 923, 927 (8th Cir. 2002) (rejecting the defendant's "invitation to calculate intended losses based upon [the defendant's] succeeding with his fraud and deception"). To do so would be to encourage the very conduct outlawed by the statute of conviction here.

The value of assets concealed serves as relevant evidence in determining intended loss. See Wheeldon, 313 F.3d at 1073 (instructing the district court to determine intended loss based on the value of assets concealed). Holthaus does not dispute the dollar amounts associated with the concealed inheritance, so the value of concealed income constitutes the upper limit "a reasonable person in [Holthaus's] position could have intended" to keep from his creditors at the time of the fraud. Staples, 410 F.3d at 490; see also Wheeldon, 313 F.3d at 1073, 1073 n.2 (holding where the defendant knows as well as anyone the value of the assets he concealed, the intended loss calculation may properly be based upon the value of the assets concealed). Holthaus failed to offer at sentencing more than his bare assertions he intended no loss. Thus, we conclude the district court did not clearly err in determining intended loss. See U.S.S.G. § 2B1.1 cmt. n.2(C) (requiring the district court to "only make a reasonable estimate of the loss").

Because we conclude the district court properly included Holthaus's $36,023.35 inheritance in the loss calculation, which alone triggers the six-level increase under § 2B1.1(b)(1)(D), we find it unnecessary to address Holthaus's arguments against the inclusion of the other assets.

Holthaus also argues a loss calculation based on the face value of his concealed inheritance results in an unfair presumption that improperly shifts the burden of proof to Holthaus. We disagree. The district court did not mechanically equate the value of concealed income with intended loss. Rather, as discussed above, the district court determined Holthaus's subjective intent based on the available evidence. Holthaus pled guilty to *knowingly and fraudulently* concealing assets and liabilities in connection with his voluntary bankruptcy petition. 18 U.S.C. § 152(c). Holthaus admitted a knowing intent to deceive when filing for bankruptcy, presumably expecting asset concealment to benefit him by either (1) making discharge of his debt more likely (intending a loss of his entire discharge amount), or (2) allowing him to retain the assets while keeping them hidden from creditors (intending a loss of the value of assets concealed). See, e.g., Piggie, 303 F.3d at 927 (explaining intended loss properly encompassed losses intended to be "the natural and probable consequences of the defendant's actions"). While the full value of the assets concealed should not automatically determine intended loss, sometimes the value of the assets concealed remains the best evidence of intended loss. Thus, Holthaus's mere assertion he did not fraudulently conceal assets fails because the government need not prove an element already established by Holthaus's adjudication of guilt. See Staples, 410 F.3d at 490 ("Absent other evidence of the defendant's intent, the size of the maximum loss that a fraud could have caused is circumstantial evidence of the intended loss which satisfies the preponderance of the evidence standard."); see also United States v. Geevers, 226 F.3d 186, 193 (3d Cir. 2000) (concluding a district court may "draw inferences from the face value . . . in arriving at the factual conclusion that the defendant intended" that amount of harm, which satisfies the government's prima facie case and shifts the burden of production to the defendant "to demonstrate that

he actually intended something less"). Here, Holthaus offered no persuasive evidence he intended to defraud his creditors of a lesser amount than the total value of the inheritance income he concealed.[5]

The government carried its burden of proving Holthaus intended a loss of more than $30,000. The district court did not clearly err in determining the full value of the concealed assets constituted intended loss.

### B.       Restitution

Holthaus claims the district court erred in concluding the bankruptcy trustee was a victim under the MVRA, 18 U.S.C. § 3663A, and in ordering restitution for the trustee's uncompensated work as a result of Holthaus's offense. Holthaus asserts his crime only indirectly affected the trustee because the trustee is not one of Holthaus's creditors, and therefore the trustee fails to meet the "directly and proximately harmed" statutory requirement. We disagree.

Determining who is a "victim" under the MVRA is a question of law we review de novo. United States v. Senty-Haugen, 449 F.3d 862, 865 (8th Cir. 2006). The MVRA defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2). Holthaus first argues the trustee is not a "person" within the meaning of the statute. The plain language of § 3663A(a)(2) does not bar a bankruptcy trustee from potentially being "directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2). See also United States v. Mickle, 464 F.3d 804, 810 (8th Cir. 2006) (explaining "the MVRA authorizes an order of restitution to any person 'directly and

---

[5]Although the record does not clearly indicate whether Holthaus intended his fraudulent concealment to effect discharge of his entire debt, thereby intending an even greater loss, we need not resolve that issue. The government has not challenged Holthaus's sentence as insufficient, and the district court did not clearly err in finding Holthaus intended to deprive his creditors of at least $30,000.

proximately harmed' as a result of the conspiracy, even if the offense of conviction did not require proof [the defendant] defraud[ed] those particular victims"), cert. denied, 127 S. Ct. 1308 (2007).  The Seventh Circuit has held bankruptcy trustees qualify as victims under the statute if their compensation is negatively impacted by a debtor's misrepresentation, concluding the defendant directly and proximately harmed the bankruptcy trustee by misstating assets, which "reduced [the trustee's] compensation and increased [the trustee's] costs." United States v. Lowell, 256 F.3d 463, 465-66 (7th Cir. 2001).  We agree and adopt the reasoning and holding in Lowell.

The district court correctly determined Holthaus's violation of 18 U.S.C. § 152(3) directly and proximately harmed the bankruptcy trustee because the trustee worked more than fifty uncompensated hours as a result of Holthaus's fraud.[6]  Thus, restitution was appropriate.

## III.   CONCLUSION

For the foregoing reasons, we affirm Holthaus's sentence and the district court's order of restitution.

_____

---

[6]To the extent Holthaus argues Hughey v. United States, 495 U.S. 411, 420 (1990) (concluding restitution should be awarded only for harm resulting from a charged offense) requires a victim be specifically named in the statute of conviction, his argument mischaracterizes the holding of Hughey.  Additionally, the MVRA superseded Hughey's holding.  See United States v. Scat, Inc., 40 F. App'x 310, 311 (8th Cir. 2002) (per curiam) (unpublished) (noting the MVRA superseded Hughey and "authorizes restitution for every victim harmed in the course of the defendant's scheme, conspiracy, or pattern of criminal activity, not just the offense of conviction").