# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2461

_____

United States of America,            *
                               *

       Plaintiff-Appellee,     *
                               *   Appeal from the United States
   v.                        *   District Court for the
                               *   District of Nebraska.
Lavon Stennis-Williams,     *
                               *

       Defendant-Appellant.   *

_____

Submitted: December 11, 2008
Filed: March 10, 2009

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and GOLDBERG,[1] Judge.

_____

SHEPHERD, Circuit Judge.

Lavon Stennis-Williams ("Defendant") pled guilty to one count of mail fraud in violation of 18 U.S.C. § 1341. The district court[2] sentenced her to 30 months imprisonment and ordered restitution in the amount of $56,134. Defendant appeals her sentence and the restitution award. We affirm.

---

[1]The Honorable Richard W. Goldberg, United States Court of International Trade, sitting by designation.

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

Defendant, an Omaha attorney, was appointed personal representative of the estate of Robert Nelson, who died on February 7, 2002. She defrauded Mr. Nelson's estate of $238,340. Robin Nelson, Mr. Nelson's daughter and sole heir, and the estate incurred $72,794 in attorney and accountant fees to discover and investigate Defendant's malfeasance. After Ms. Nelson filed a civil suit in Douglas County, Nebraska, Defendant voluntarily paid $25,000 in partial restitution. In May 2007, the parties reached a settlement agreement, pursuant to which Defendant paid an additional sum of $190,000. The settlement agreement also contained a covenant not to prosecute.

Unbeknownst to Defendant, the United States Attorney's office was investigating her conduct for mail and wire fraud. A federal grand jury indicted Defendant in November 2007, charging her with two counts of mail fraud and four counts of wire fraud. In February 2008, she pled guilty to one count of mail fraud. The Presentence Investigation Report calculated the estate's loss at $238,340, requiring the addition of 12 offense levels and resulting in a Guidelines range of 24 to 30 months. See United States Sentencing Commission, Guidelines Manual, §2B1.1(a)(2), (b)(1)(G) (setting a base offense level of six and adding 12 levels where the loss is more than $200,000 but less than $400,000). Defendant objected, arguing that the loss calculation should have taken into account the amounts she reimbursed the estate during the civil lawsuit, requiring the addition of only four offense levels and resulting in a Guidelines range of four to ten months. See id. §2B1.1(b)(1)(C) (add four levels where the loss is more than $10,000 but less than $30,000). The district court denied Defendant's objection regarding the loss calculation and sentenced her to 30 months imprisonment:

> I find that the proper loss amount is $238,340 for offense level calculations. . . . There is no factual dispute that the loss or intended loss

was $238,340, despite the fact that Ms. Stennis paid it back before she was prosecuted.  The public interest looks to the intended harm, and that's what I ought to concentrate on, as I understand the law, so that is what I am going to concentrate on.

(Sentencing Tr. 52, June 27, 2008.)

The United States also moved for restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, asserting that Defendant should reimburse the estate for attorney and accountant fees the estate paid to investigate Defendant's conduct.  Defendant objected, arguing that Ms. Nelson and the estate effectively waived their right to restitution for the fees when they agreed to settle the civil case, in which recovery for attorney's fees was permissible, for a specified sum. The district court denied Defendant's objection and ordered her to pay $56,134 in restitution.[3]

Insofar as restitution is concerned, I'm troubled by the settlement agreement and the covenant not to prosecute.  It is conceivable that there was a breach of the settlement agreement by the settling parties on the victim's side. . . . [But] the victim is out, there is no question, the fees have been paid, the victim is out $56,134.  Whether she gave that up, or her lawyers gave that up for her in the settlement agreement, and there has been some breach of it, . . . that's to be resolved by the state court, not by me.  It's clear that the victim is out that money and needs to be repaid and I so order.

(Sentencing Tr. 52-53.)  Defendant brings this appeal.

---

[3]The district court calculated the restitution award by adding $238,340, the amount Defendant stole from the estate, and $72,794, the fees the estate incurred investigating Defendant's conduct, for a total of $311,134.  Then, the court subtracted amounts the estate had already been reimbursed, including $190,000 from the civil settlement, $25,000 from the Defendant prior to settlement, and $40,000 from the Nebraska State Bar Association, for a balance of $56,134.

## II.

"We review de novo the district court's interpretation and application of the advisory Sentencing Guidelines." United States v. Holthaus, 486 F.3d 451, 454 (8th Cir.), cert. denied, 128 S. Ct. 343 (2007) (citations omitted).  Defendant contends that the district court erred in determining the amount of loss for purposes of calculating her offense level under the Sentencing Guidelines. Specifically, Defendant argues that payments she made to the estate during the civil suit reduced the estate's actual loss from $238,340 to $19,840.  Thus, according to Defendant, the district court should have increased her base offense level by 4 levels instead of 12.  See USSG §2B1.1(b)(1)(C).

"Loss means the greater of either actual loss or intended loss." Holthaus, 486 F.3d at 454 (quotations omitted); accord USSG §2B1.1, comment. (n.3(A)).  The Guidelines define "intended loss" as "the pecuniary harm that was intended to result from the offense."  USSG §2B1.1, comment. (n.3(A)(ii)).  The Guidelines also provide that "[l]oss shall be reduced by the . . . money returned . . . by the defendant . . . to the victim *before the offense was detected*." Id. §2B1.1, comment. (n.3(E)(i)) (emphasis added).  "The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency." Id.

Defendant's intentional theft of $238,340 from the estate is an "intended loss," see id. §2B1.1, comment. (n.3(A)(ii)), and the payments she made to the estate during the civil suit do not diminish her culpability for the underlying fraud, see, e.g., United States v. Parsons, 141 F.3d 386, 392-93 (1st Cir. 1998) ("Loss is a proxy for the seriousness of the offense" and "a defrauder cannot purchase a shorter term by a belated return of the proceeds[.]").  Although Defendant returned most of the money she stole, she did so long *after* Ms. Nelson and the estate discovered the theft.

-4-

Therefore, the Guidelines did not entitle Defendant to have the money she returned credited against the amount of loss for purposes of calculating her offense level. See USSG §2B1.1, comment. (n.3(E)(i)). The district court did not err in increasing Defendant's base offense level by 12 levels. See id. §2B1.1(b)(1)(G).

III.

We review for clear error the district court's finding as to the proper amount of restitution. United States v. Chalupnik, 514 F.3d 748, 752 (8th Cir. 2008). For "an offense against property under this title . . . including any offense committed by fraud or deceit," the MVRA provides that "the [district] court shall order . . . that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate." 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). Neither party disputes that mail fraud is such an offense, see id. § 1341, or that restitution is mandatory in this case, see id. § 3663A(a)(1). However, Defendant asserts that the district court erred by including in its restitution calculus the attorney and accountant fees the estate incurred to investigate her fraudulent conduct. Defendant contends that the estate effectively waived its right to restitution for such fees when it agreed to settle the civil case, in which recovery for attorney's fees was permissible, for a specified sum. Therefore, according to Defendant, the amount of restitution should be zero because the estate has already been reimbursed for its other losses.

Under the MVRA, "[t]he order of restitution shall require that [the] defendant . . . reimburse the victim for lost income and necessary child care, transportation, and *other expenses incurred during participation in the investigation* or prosecution of the offense or attendance at proceedings related to the offense." Id. § 3663A(b)(4) (emphasis added). However, "[r]estitution may only be awarded 'for the loss caused by the specific conduct that is the basis of the offense of the conviction.'" United States v. DeRosier, 501 F.3d 888, 896 (8th Cir. 2007) (quoting Hughey v. United States, 495 U.S. 411, 413 (1990)). This court has held that privately incurred

investigative costs constitute foreseeable losses that are directly caused by a defendant's fraudulent conduct.  See, e.g., id. at 896-97; United States v. Piggie, 303 F.3d 923, 928 (8th Cir. 2002); United States v. Akbani, 151 F.3d 774, 780 (8th Cir. 1998).  Therefore, the district court did not clearly err by including the estate's investigative costs in its restitution calculation.  This court has also held that, because the victim does not have an independently enforceable right to receive criminal restitution, the victim cannot waive such a right in a civil settlement.  United States v. Vetter, 895 F.2d 456, 458 (8th Cir. 1990) (per curiam) (applying the Victim and Witness Protection Act, the predecessor of the MVRA); see also United States v. Bearden, 274 F.3d 1031, 1041 (6th Cir. 2001) (applying the MVRA and holding that "a private settlement between a criminal wrongdoer and his victim releasing the wrongdoer from further liability does not preclude a district court from imposing a restitution order for the same underlying wrong").  Thus, the district court's criminal restitution order did not impermissibly interfere with the contractual rights of the parties to the civil settlement agreement.[4]

IV.

Accordingly, we affirm the judgment of the district court.

_____

_____

[4]Both Defendant and the United States filed motions to expand the record on appeal to include additional evidence of the parties' conduct vis-à-vis the settlement agreement.  Like the district court, we express no opinion as to whether any of the parties to the civil case breached the settlement agreement.  Such matters are outside the scope of this criminal appeal, and both parties' motions are denied.